## Commonwealth *v.* Noel, Appellant.

Argued September 26, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*A. M. Oliver,* with him *Thomas Park Shearer,* for appellant.

*Samuel Strauss,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney, for appellee.

OPINION BY RHODES, P. J., November 15, 1950:

Defendant was indicted for involuntary manslaughter, tried, and convicted. Motions in arrest of judgment and for a new trial were refused. After the imposition of sentence, defendant appealed to this Court.

The Commonwealth charged that defendant was the driver of the automobile which struck and instantly killed Rachel M. Bernhardt, a pedestrian. Defendant admitted that the 1949 Ford automobile which he drove to his home in Mt. Lebanon, Allegheny County, from downtown Pittsburgh, in the early morning of October 30, 1948, was the automobile which struck and killed the deceased. It was not controverted that the automobile at the time was being driven in such a careless and reckless manner as to make the killing involuntary manslaughter. The defense was that defendant did not drive the automobile at the time of the accident, but that an unknown person took it from the driveway of defendant's home after he had retired, caused the death, and then returned the automobile to the driveway from which it had been taken.

Defendant first questions the sufficiency of the evidence to sustain the conviction. This issue is confined to defendant's identity as the driver of the automobile at the time of the fatal accident. The Commonwealth established that Russell Bernhardt, his wife Rachel M. Bernhardt, and Albert Macrum left Berenda's Cafe at 3134 West Liberty Avenue, Dormont, about 2:30 a.m. October 30, 1948. They walked across West Liberty Avenue to the Bernhardt automobile which was parked on the west side of the street. As he reached the curb, Mr. Bernhardt noticed the headlights of an automobile approaching rapidly about 200 feet away, and he turned

to warn his wife and Mr. Macrum who were a few feet behind him. The oncoming automobile was being driven at an excessive rate of speed; the testimony was to the effect that it was proceeding between 70 and 100 miles an hour. Mrs. Bernhardt was struck by this automobile and killed instantly. Mr. Macrum was thrown beneath the Bernhardt automobile on the west side of West Liberty Avenue and seriously injured. This automobile then struck the left rear of the Bernhardt automobile, and after stopping momentarily about a block away it continued toward Mt. Lebanon.

An employe of the Pittsburgh Railways Company, while repairing a switch on the trolley tracks on West Liberty Avenue about 800 feet beyond the scene of the accident, observed a dark 1949 Ford with white side wall tires pass about 2.30 a.m. This witness noticed that the fender of the Ford "was jammed up on the wheel" and "made a sound like a siren."

Defendant was engaged in the insurance business in Pittsburgh and had his office in the Investment Building. He lived at 1241 Washington Road, Mt. Lebanon. About noon on October 30, 1948, John J. Kauper, Captain of Police of Mt. Lebanon Township, discovered a dark green 1949 Ford with a damaged right front fender parked in the driveway at defendant's home in Mt. Lebanon. Defendant had been using this automobile about a week. It had been loaned to him by a friend, J. L. Risdon. Defendant admitted that he drove this Ford from downtown Pittsburgh to his home in Mt. Lebanon in the early morning of October 30th, and that he went out West Liberty Avenue and had passed the place where Mrs. Bernhardt was killed. He testified, however, that he arrived home about 1:30 a.m. and promptly retired, and that he left the automobile standing in his driveway with the keys in the ignition. Under defendant's theory the automobile was taken by some unknown person from the driveway after defendant

arrived home, was driven on West Liberty Avenue and became involved in the fatal accident at 2:30 a.m., and then was returned by said unknown person to his driveway.

Expert witnesses called by the Commonwealth, having examined the broken glass and the paint scrapings from the respective automobiles, testified that the Risdon 1949 Ford found in defendant's driveway the next day was the automobile that struck and killed Mrs. Bernhardt and then came in contact with the Bernhardt automobile.

On the issue of identity the Commonwealth also called as a witness James E. Wood, Jr., a cab driver, who at the time was sitting in his cab in front of the Dennis Theatre, Mt. Lebanon, about a mile beyond the scene of the accident and on the route traveled by defendant to his home. This witness saw a 1949 Ford coming from the direction of the city about 2:30 or 2:45 on the morning of October 30th. He heard the tires rubbing the fender, and said, "it also sounded as if the fan was hitting the radiator." Wood observed that the only person in the Ford automobile was the driver who was a white man. When asked to identify defendant as the driver, this witness said, "I can't say with certainty he is the man but in my opinion he does look like the man. Q. And upon what do you base that? A. The features of the nose and the side of the face."

Two other witnesses, Mr. and Mrs. T. A. Straub, Jr., who first met the defendant that night, testified that defendant walked with them from the Nixon Cafe in downtown Pittsburgh to his own automobile across the street between 2:00 and 2:15 in the morning in question. Ralph B. Miller, Chief of Police of the Borough of Dormont, testified he drove the distance of 4.4 miles from downtown Pittsburgh to the scene of the accident on West Liberty Avenue in sixteen minutes. This test trip over the route taken by defendant was made at

two o'clock in the morning while driving at normal speeds and observing traffic regulations.

In response to a telephone call from Chief of Police Miller, defendant voluntarily came to the Dormont Police Station on the afternoon of October 30th. Miller testified that defendant said the damage to the Risdon 1949 Ford had been caused by someone who had taken it from the place where it had been parked on Fourth Avenue before defendant left for home. Defendant testified that when he left the Nixon Cafe to drive home, the night of the fatal accident, he found that his borrowed Ford (with the keys in it) had been moved about 30 or 40 feet from where he had parked it on Fourth Avenue and that the right hood and fender had been damaged. In his oral statements to Miller, defendant admitted having had a few drinks the previous night and said, "I can handle my drinks and if I hit someone I didn't know it." When it was pointed out to defendant that the Risdon 1949 Ford was the automobile involved in the accident, defendant replied, "It is definitely the car but I was home at 1:15 and somebody must have stolen it out of my driveway and returned it."

The evidence in this case, considered in its entirety, was ample to sustain the conviction of defendant. Proof that the automobile which defendant drove by the scene of the accident was the one which caused the death of Mrs. Bernhardt was conclusive. Proof of the reckless driving necessary to support a charge of involuntary manslaughter was likewise sufficient. The circumstantial evidence tending to establish that defendant was the driver of that automobile at the time of the accident was strong and in conjunction with the other evidence was sufficient to warrant the submission of the case to the jury by the trial judge. Two witnesses, the Straubs, testified that defendant left downtown Pittsburgh between 2:00 and 2:15 on the morning of

October 30th. This permitted his arriving at the scene of the accident at about 2:30 a.m. even at normal driving speeds. Two other witnesses independently observed a dark Ford answering the description of the Risdon automobile being operated in a damaged condition immediately beyond the scene of the accident, a few minutes after it had occurred, on the route which defendant admitted he took to his home.

It is true that no eyewitness was able to make a positive identification of defendant as the driver at the time of the accident, but the testimony of Wood could be considered by the jury along with the strong circumstantial evidence as to identity. Such opinion evidence of identification was admissible and relevant on the issue of identification even though insufficient in itself to establish identity. *Com v. Lehman,* 166 Pa. Superior Ct. 181, 183, 70 A. 2d 404; *Com v. Sharpe,* 138 Pa. Superior Ct. 156, 10 A. 2d 120. The trial judge carefully instructed the jury that the testimony of Wood as to identification was opinion evidence only, and was to be weighed and considered as such. No objection was made to the testimony of Wood at the time it was given. Consequently the motion to strike it out, which was made after other witnesses had testified, was not based on any objection and was properly refused. *Forster v. Rogers Bros.,* 247 Pa. 54, 63, 93 A. 26; *Weller v. Davis,* 245 Pa. 280, 283, 91 A. 664.

We shall consider the remaining alleged errors in the trial of this case. Such matters now questioned did not at the time appear sufficiently serious to cause an exception to be taken or an objection to be made except in one instance.

Chief of Police Miller had made a written memorandum in longhand of the answers which defendant gave to questions propounded at the original interview at the Dormont Police Station. On the same day Miller personally made an accurate typewritten copy of this

memorandum and destroyed the longhand notes. In testifying for the Commonwealth as to the admissions made by defendant on that occasion Miller referred at length to this typewritten memorandum. Counsel for defendant made no objection to Miller's testimony at the time, but it is now claimed that the witness should not have been allowed to read from the memorandum when the original notes taken by the witness in longhand had been destroyed. The testimony of Miller as to what defendant said when first interviewed was clearly competent as extrajudicial, though oral, admissions or confessions of guilt upon the part of the defendant. *Com. v. Brandler,* 81 Pa. Superior Ct. 585; *Com. v. Dolan,* 155 Pa. Superior Ct. 453, 458, 38 A. 2d 497. It was permissible for the witness to refer to the transcribed copy of his notes in connection with his testimony. *Com. v. Disalvo,* 275 Pa. 70, 75, 118 A. 559. A witness may use a book or memorandum for the purpose of refreshing his memory even though the writing itself may not be competent evidence. *Com. v. Klein,* 42 Pa. Superior Ct. 66; *Edwards v. Gimbel,* 202 Pa. 30, 51 A. 357; *Nestor v. George,* 354 Pa. 19, 22, 46 A. 2d 469.

In an attempt to impeach the credibility of the Commonwealth's witness Chief of Police Miller, counsel for defendant cross-examined Miller as to his testimony at the coroner's hearing. In the course of this cross-examination, defense counsel asked the district attorney if the latter objected to the transcript of the coroner's notes, to which the district attorney replied, "I certainly do, and I intend to show why the stenographer was released from the coroner's office." The trial judge cautioned the district attorney not to make such remarks, and at the same time refused the motion of defendant's counsel for the withdrawal of a juror and the continuance of the case. Under the circumstances there was no showing of prejudice to the defendant. The with-

drawal of a juror because of an improper statement by counsel is largely a matter within the discretion of the trial judge. *Fahrer v. Blumenthal,* 125 Pa. Superior Ct. 568, 572, 190 A. 206; *Clark v. Essex Wire Corp.,* 361 Pa. 60, 65, 63 A. 2d 35.

At the close of the Commonwealth's case the district attorney stated, in the presence of the jury, that "the following witnesses, whom the Commonwealth does not desire to call, are available and will be retained here for the use of the defense if they see fit to use them [list of witnesses given]." Defendant's counsel made no objection, but he now argues such a statement by the district attorney, in the presence of the jury, prejudiced the defendant and deprived him of a fair trial. Most of these witnesses were police officers whose testimony would have been merely corroborative or cumulative. It was the duty of the district attorney to present all the testimony on the material facts (*Com. v. Deitrick,* 221 Pa. 7, 15, 70 A. 275), and it was proper for him to notify the defendant of his determination not to call certain witnesses who were in court. *Com. v. Sarkis,* 164 Pa. Superior Ct. 194, 199, 63 A. 2d 360. Making no objection at the time to the district attorney's statement, counsel apparently did not feel that the naming of the witnesses within the hearing of the jury was prejudicial to the defendant. It cannot be said that defendant did not receive a fair trial, or that he was prejudiced in this or any other respect.

The judgment is affirmed, and the record is remitted to the court below, and it is ordered that defendant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with the sentence, or any part thereof, which had not been performed at the time the appeal was made a supersedeas.