Commonwealth *v.* Smith, Appellant.

Argued March 14, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Paul A. McGinley*, with him *Harry P. Creveling*, for appellant.

*George J. Joseph*, First Assistant District Attorney, with him *M. Jack Morgan*, District Attorney, for appellee.

OPINION BY ROSS, J., July 21, 1955:

This is an appeal from a sentence for involuntary manslaughter after conviction by jury and refusal of new trial by the court below.

On the night of June 15, 1953 at about 11:20, the defendant, Robert E. Smith, was operating his automobile in an easterly direction on Emmaus Avenue in the City of Allentown. At 11th and Emmaus Avenue he collided headon with the vehicle driven by Florrie Salevsky going in the opposite direction, and as a result of this collision Mae Rossmando, a passenger in the Salevsky car, was killed. Both drivers and Donald Burian, a passenger in defendant's automobile, survived. The evidence indicates that defendant left the Borough of Emmaus in excess of 75 miles per hour on a narrow, winding, high-crown road. Just before reaching 11th and Emmaus Avenue in Allentown, he applied his brakes and skidded 292 feet down a downgrade, crossed the road and collided with the Salevsky car at a right-hand curve at the foot of the downgrade.

The jury returned a verdict of guilty, and after defendant's motion for a new trial was refused he was sentenced by the Lehigh County court, and this appeal followed.

The defendant does not question the sufficiency of the evidence to sustain the conviction but bases this appeal upon several alleged trial errors.

One of the witnesses called on behalf of the Commonwealth was Donald Burian, a passenger in defendant's automobile at the time of the collision. On the morning following the accident this witness had given a written subscribed statement of the events leading up to the accident to the Allentown Police Department. At the trial and during the direct examination by the Commonwealth it was quite evident that the witness was reluctant to testify against his host, the defendant. The record indicates that it became increasingly necessary for the Commonwealth to extract the facts from this witness by leading questions. The witness had lapses of memory and then began contradicting his prior subscribed statement as to certain material facts. His testimony and his prior statement conflict regarding the facts of defendant's speed, the distance from which defendant first observed the oncoming vehicle, the time when defendant first applied his brakes (whether prior to observing the Salevsky car or after, and whether he applied his brakes to slow up for the curve, or to avoid the collision after observing the Salevsky car), and there is conflict concerning the defendant and Burian being followed out of the Borough of Emmaus by a police car and their increase in speed because of it. (The police officer testified he could not catch them at 75 miles per hour.) In view of these contradictions, the Commonwealth pleaded surprise and requested permission to cross-examine the witness on the basis of his prior statement. The learned trial

judge over objections of defendant allowed it. Defend-
ant contends this was error.

In 1945 Judge (later Mr. Justice) ARNOLD, in
*Selden v. Metropolitan Life Insurance Co.*, 157 Pa. Su-
perior Ct. 500, 43 A. 2d 571, fully and completely dis-
cussed the problem of impeaching one's own witness.
The determination of whether the impeachment will be
allowed is one within the judicial discretion of the
trial judge, but it is, of course, subject to review if
abused. Proper groundwork must be laid and before
the impeachment will be allowed the party calling the
witness must show first that he has been genuinely
surprised or "taken unawares"; that is, he must show
the prior statement upon which he relied and how
that statement differs in material respects from the
testimony. That was adequately shown here. Secondly,
he must show his right to rely upon the previous
statement. He may not rely upon a prior oral state-
ment of the witness unless such was made in the pres-
ence of the party calling him or his counsel. Where,
however, as here, the prior statement is in writing and
subscribed by him "the law treats this as a sort of con-
tinuing inducement and neither needs to have been
made in the presence of the party or his counsel. The
plea of surprise must rest upon some kind of a repre-
sentation by the witness so the counsel was thereby
induced to call him." *Selden* case, supra, page 506. In
the instant case the district attorney had not previous-
ly interviewed the witness, but he did have the prior
subscribed statement and, therefore, had a right to rely
upon his testimony being the same when he called him.
Thirdly, it was necessary to show that the prior state-
ment was inconsistent with the testimony of the wit-
ness given previous to the plea of surprise. The trial
court was satisfied of the inconsistency, and so are we.

After the lower court granted the Commonwealth's

motion to cross-examine the witness, the district attorney proceeded to do so and then introduced into the evidence, *without defendant's objection,* the prior written statement, which was then read to the jury. No explanation was made by the trial judge or any of the attorneys as to the exact purpose of the introduction of this statement. The sole purpose of prior inconsistent statements is to impeach the witness, that is, to indicate to the jury that his present testimony should be disbelieved because he has told prior conflicting stories. Its purpose is *not* affirmative proof of the facts set forth in the prior written statement. *Com. v. Turza,* 340 Pa. 128, 138, 16 A. 2d 401, cited in the *Selden* case at page 508. In the instant case the defendant should have requested the court to caution the jury concerning the limited purpose for which the prior statement was introduced but since he failed to object, and in fact consented, to the introduction without any explanation, the question is academic here.

We are, therefore, of the opinion that the trial court did not abuse its discretion in allowing the Commonwealth to impeach the witness Donald Burian.

Defendant has raised five other alleged trial errors which he does not strenuously press on this appeal. They merit discussion, though not in the same detail as the Burian impeachment.

A police officer of the Borough of Emmaus testified that he followed defendant's vehicle out of the borough for the several miles to the point of collision in Allentown. He stated that at 75 miles per hour speed he could not catch up with defendant, and that he had him in sight up until about 4/10 of a mile from the scene of the accident, when he lost him due to curves. He arrived at the scene immediately thereafter as the parties were emerging from the cars. A bus driver testified concerning defendant's speed when he

passed him four or five blocks from the accident. The trial judge admitted this evidence but in his charge to the jury cautioned them only to consider the defendant's speed just before the accident and that his speed at any time prior thereto could not be charged against him. This cured any complaint defendant has regarding the admission of the testimony concerning speed at those distances. We are inclined to believe, however, that it was not error to admit this testimony for, while it is not direct evidence of the speed at the time of the accident, it corroborates the other evidence of speed just prior to the collision. That this is admissible is indicated in *Shellenberger v. Reading Transportation Co.*, 303 Pa. 122, 154 A. 297, where evidence of speed 300 to 900 feet from the scene was admitted. "We think it showed a state of affairs sufficiently close to the scene of the accident as to be to some extent at least corroborative of what the plaintiff testified confronted her just before it occurred, a disregard on the part of the driver of the bus of his duty to give approaching traffic its fair share of the highway and a driving around the curve at what might well be considered a high rate of speed under the circumstances." *Shellenberger* case at page 127. See also *Com. v. Pennzoil Co.*, 358 Pa. 221, 223, 56 A. 2d 93.

Defendant next contends that the court erred in allowing testimony concerning the presence of 292-foot-long skid marks at the scene of the accident "where there was grave doubt as to proper identification that the tire marks came from defendant's car". We have searched the record and can find no doubt whatever in their identification. There was testimony from several witnesses, police officers included, concerning the length and nature of the skid marks. Police officers measured the marks upon arriving at the scene shortly after the accident and they testified that the marks be-

gan at a certain place, took a particular course, and ended at the point of impact. Also, photographs were taken. The marks came from the direction from which defendant came, they began at the place where by his own testimony he applied his brakes, they took a course identical with the course described by the defendant in his testimony, and they ended at the point of collision. They were fresh tire skid marks. Defendant made no effort to show that they were old or from some other vehicle. The marks were sufficiently and adequately identified by the Commonwealth in the light of the circumstances and defendant's own testimony, and his contention is without merit.

On the morning after the accident defendant, in question and answer form, made certain statements to the police. These statements, questions and answers were taken down verbatim by a police stenographer, who immediately transcribed them. Defendant did not sign the statement and at his trial the police stenographer was called by the Commonwealth to testify. She properly identified and authenticated the transcribed statement as being made by her at the time it was given and that it was accurate. She further testified that she had an independent recollection of some of the questions and answers but not all. The transcribed notes were offered into evidence by the Commonwealth, but on objection by defendant's counsel were refused. The Commonwealth then began questioning the stenographer concerning the questions propounded to defendant that morning and his answers thereto. She was allowed to use the notes as a memorandum to refresh her recollection on certain points. Defendant claims this was error. He claims that as to some of the questions and answers the stenographer was allowed to read aloud to the jury from the memorandum. A reading of the record indicates that as to

some responses she gave apparently verbatim answers to the questions. Whether this indicates that as to the former she read aloud from the memorandum we cannot determine from the record. The record does indicate, however, than when the district attorney initially asked the witness to read the questions defendant's counsel objected, and thereafter the district attorney used an acceptable form of question. There is no doubt that she was properly allowed to use the memorandum to refresh her recollection. *Com. v. Disalvo,* 275 Pa. 70, 118 A. 559; *Com. v. Noel,* 168 Pa. Superior Ct. 42, 49, 76 A. 2d 236. We do not agree, however, that the proposition of *Com. v. Woods,* 366 Pa. 618, 79 A. 2d 408, to the inferential effect that a witness cannot read from the memorandum if she has an independent recollection is applicable here. What is forbidden is that the witness who has an independent recollection which needs refreshing from a memorandum made at the time of the incident cannot merely read the statement to the jury. She can use it only to recall the events or matters stated at the time and then must testify from this refreshed memory. It is the refreshed memory which has the probative force. In the instant case the witness showed by her testimony that she had certain independent recollections. As to others she needed to be refreshed and for that purpose she referred to her notes. After refreshing her memory it was not objectionable for her to give the exact words of the defendant in answering the question. To require her to paraphrase every answer would be an unreasonable substitution of form for substance.

Defendant also contends that the trial court erred in refusing to withdraw a juror when certain questions were asked of him by the Commonwealth on cross-examination. One of these questions was whether defendant was telling the truth on the stand or whether

he told the truth the morning after the accident when he gave the statement to the police. Defense counsel's objection was overruled and defendant stated that he spoke the truth now and that he did not tell the truth the morning after the accident. Certainly the defendant in taking the stand put his credibility in issue and cross-examination on the basis of the prior inconsistent admission was proper. Perhaps the form of the question was objectionable, but there was nothing inflammatory or prejudicial in it. Concerning his claim that he could not remember some of the facts in the statement given to the police because he was in a daze, he was asked on cross-examination by the Commonwealth: "When was your mind in a daze? Was it in a daze when you were questioned by Lieutenant Fisher, or was it dazed when you flew over that road in excess of 75 miles per hour?" Defense counsel objected and was sustained. He was refused, however, the withdrawal of a juror. While the question was not a proper one, there was some basis in fact for it and it was not so highly inflammatory that it would prejudice defendant. The immediate action of the court in ruling the question improper prevented any harm that might have been done. Nothing further was made of these questions and they were not of such nature that they would tend to draw the jurors' minds from the essential issues, nor would they mislead the jury in any way.

Defendant's final contention concerns his offer to prove the condition of the left front brake and wheel on the day after the collision to corroborate his testimony that the left front brake grabbed and was defective. The lower court properly ruled this offer out on the basis that the condition of the brake and wheel at a time after the collision was not relevant to its condition prior to the accident. We agree, especially since defendant did not offer to prove that the condition of

the brake the next day was not changed from its condition just prior to the accident. Nor, indeed, was there any offer or evidence to prove that the locked brake was the cause of the accident rather than defendant's reckless speeding.

A careful reading of the voluminous record in this case indicates that defendant received an impartial and fair trial. His rights were adequately protected not only by his own counsel but by the court. The alleged errors which we have discussed were harmless discords to a long and thorough trial. The overwhelming evidence supports the finding of the jury, unprejudiced by these discords.

Judgment of sentence is affirmed; and it is ordered that defendant, if released on bail, appear in the court below at such time as he may be there called and that he be committed by that court until he shall have complied with his sentence or any part of it which had not been served at the time his appeal was made a supersedeas.