STATE OF NORTH CAROLINA v. ELVIN CLAUDE POPE

No. 117

(Filed 6 June 1975)

1. **Criminal Law § 90— impeachment of own witness — prior inconsistent statements**

It remains the general rule in this jurisdiction that the solicitor (or district attorney) may not impeach a State's witness by evidence that the character of the witness is bad or that he has made prior statements inconsistent with or contradictory of his testimony.

2. **Criminal Law § 88— State's witness — testimony for defendant on cross-examination**

Although a State's witness was testifying on cross-examination as a defense witness, bent upon exonerating defendant of the charge for which he was being tried, he remained the witness of the State, which had called him.

3. **Criminal Law § 90— State's witness — prior inconsistent statements — evidence incompetent**

A sheriff's testimony as to prior inconsistent statements made by the State's witness was incompetent, but the trial court's refusal to strike his entire testimony was sustainable on two grounds: (1) when no objection is interposed to an incompetent question at the time it is asked, a motion to strike the answer is addressed to the trial judge's discretion and his ruling is not subject to review in the absence of abuse; (2) where only a portion of a witness's testimony is incompetent, the party moving to strike should specify the objectionable part and move to strike it alone.

4. **Criminal Law § 90— no impeachment of own witness — exception**

There is a generally recognized exception or corollary to the anti-impeachment rule which allows impeachment where the party calling

State v. Pope

the witness has been misled and surprised or entrapped to his prejudice, but the allowance of a motion to impeach one's own witness by proof of his prior inconsistent statements rests in the discretion of the trial court.

**5. Criminal Law § 90— impeachment of own witness — proof of prior inconsistent statements — limitation**

Under the exception to the anti-impeachment rule the right to prove prior oral inconsistent statements is limited to statements made by the witness to the State's attorney or to some person whom he specifically instructed to communicate the statement to the attorney; however, where investigating officers, whose duty it is to seek, find, preserve and analyze evidence of criminal offenses and turn it over to the prosecuting attorney for ultimate legal action, have furnished him with formally prepared, signed or acknowledged statements of witnesses, he may rely on these statements unless he possesses other information which reasonably apprises him that they were false or that the witness making them intends to repudiate them.

APPEAL by defendant pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals finding no error in the trial before *Winner, S.J.,* at the 31 May 1974 Session of MOORE.

Defendant was tried upon an indictment which charged that on or about 3 January 1974 he "did feloniously steal, take and carry away" a Lennox heat pump, the property of O. J. Garrison having a value of more than two hundred dollars. Evidence for the State tended to show:

On 3 January 1974 Mr. and Mrs. O. J. Garrison were engaged in building a new home between Highway 15-501 and Morganton Road in Southern Pines. As part of an air-conditioning system, they had purchased a Lennox heat pump from Charles Pressley, a dealer in Lennox heating and air-conditioning units. This unit, worth $650.00, was on the premises awaiting installation. On the morning of 3 January 1974, Mr. and Mrs. Garrison discovered that the pump was missing. Tracks and indentations in the wet ground indicated that the persons who had taken the unit had carried it through the woods and loaded it on a motor vehicle.

In its investigation of the theft, the Moore County Sheriff's Department engaged the assistance of an undercover agent, Don Tripp, of the Town of Chapel Hill. On 18 January 1974 Tripp, who had never met defendant, telephoned him at his home. He told defendant he wanted to buy an air-conditioning unit and would pay $450.00 for it. In accordance with defendant's instructions Tripp arrived at defendant's home about 8:30 p.m., and defendant met him in the yard. Tripp identified himself as

"the one that was supposed to see him that night to buy the air-conditioning unit" and inquired if the price was still $450.00. When defendant said it was, Tripp asked if there was any chance of the unit being traced. Defendant said No; that the plates had been removed. Defendant helped Tripp load the heavy unit on the truck in which he had come. Tripp forthwith delivered the unit to the Moore County Sheriff's Department, where Charles Pressley examined it. Although the serial number plates had been removed Pressley was able to identify it as the unit he had sold the Garrisons by the "unusual manner of work" which he had done on it. He had used wire nuts, three times the normal size for such a unit, because he did not have the correct size. In order to keep the large nuts from falling off he had had to "skin the wires back about two inches and fold them down."

Richie Nelson Pope (Richie), the 19-year-old son of defendant, was called as a State's witness. After stating his name, age, address, and employment as a carpenter, Richie testified: "I did not go with my father anywhere on Morganton Road on January 3, 1974. I did go with him that night to his brother's house. I have never been to a dwelling owned by O. J. Garrison on Morganton Road."

The next statement in the record is, "Jury out." In the absence of the jury Richie testified that he had "pled guilty to this offense," but he "was never on the premises"; that he and his father had acquired the unit as a gift from "two Indian fellows." He said, "I realize that I told Sheriff Wimberly that my father and I went to the premises and removed the property in question, loaded it and gave complete details of what occurred there at the time."

Upon the jury's return to the courtroom Richie testified that after he was arrested on 18 January 1974 he told Sheriff Wimberly that he was driving and that his father and Larry Martin [defendant's son-in-law] were with him. He said, "I told him that we went out 15-501 and stopped on the shoulder of the road there."

In answer to the solicitor's question, "And did you tell him [Sheriff Wimberly] you stayed in the car and that your father and Larry Martin went through the woods up to—," Richie answered, "I told him Larry Martin did."

On cross-examination by defense counsel, Richie said: "I never denied to the Sheriff or any of the officers that I did not steal it. In fact, I pled guilty. My father did not have any part in it; he did not go with me and steal any of the air-conditioning units. I don't deny that I did it myself."

At the conclusion of Richie's testimony the State immediately called C. G. Wimberly, Sheriff of Moore County, as a witness. After giving his name, position, tenure in office, and stating that he had "read" Richie his constitutional rights and obtained a written waiver from him, the Sheriff testified that on the night of 18 January 1974 Richie "made some statements about the theft of a Lennox heat pump." He detailed these statements as follows: "He told me that he and his daddy, Elvin [defendant], and Larry Martin left his daddy's house and went out on 15-501, said he was driving, . . . [H]e told me they went out there and he parked there on the shoulder of the road, that would be 15-501, some distance from this house. He said that he stayed in the vehicle, and that his daddy and Larry Martin went to the house, brought this unit back through the woods and come back and—"

At this point, defendant objected; the court said, "Sustained as to that," and the Sheriff did not finish the statement. Immediately, thereafter, in answer to four questions from the solicitor, Sheriff Wimberly testified without objection that Richie told him that "the unit was put in the trunk of the car"; that "they took it to Southern Pines and left it"; that "it was later moved to his father's house"; and that "he was nervous when they were moving it because he was involved."

The foregoing statements concluded the Sheriff's direct examination and counsel for defendant then said: "For the record, I want to make an objection and motion to strike his entire testimony." The court's ruling was, "The motion to strike his entire testimony is denied." Thereafter defendant cross-examined the Sheriff, who said, *inter alia*, that defendant was not present at the time he questioned Richie.

Defendant, as a witness in his own behalf, testified substantially as follows:

He has never been upon the property of O. J. Garrison, and he did not steal the Lennox heat pump. He did not talk with Don Tripp on the telephone with reference to the sale of any air-conditioning unit. He was, however, at home when Tripp

came into his yard and said he had come to see an air conditioner. He showed him a unit which Larry Martin had left there three or four days earlier. "No money was involved, or no money was discussed whatsoever. Nelson Pope (Richie) was also on the premises at that time" and the three of them loaded the unit into Tripp's truck. He had no knowledge as to where Larry Martin got the unit, and he had made no statement whatever to Sheriff Wimberly or any of his deputies.

At the conclusion of defendant's testimony Sheriff Wimberly was recalled. He then testified that defendant was arrested on the night of January 18, 1974; that after he had explained his constitutional rights to him defendant had signed "the waiver," and answered questions about the theft of this Lennox air-conditioning unit heat pump. Defendant denied that he knew the unit had been stolen. He told the Sheriff he had found the unit in a field some distance from the road while he was rabbit hunting; that it was covered with pine straw.

The jury found defendant guilty as charged. The judgment of the court was that he be imprisoned for ten years, and defendant appealed. The Court of Appeals, one member of the panel dissenting, found no error in the trial, and defendant appealed as a matter of right to this Court.

*Rufus L. Edmisten, Attorney General; George W. Boylan, Assistant Attorney General, for the State.*

*Seawell, Pollock, Fullenwider, Van Camp and Robbins by Bruce T. Cunningham, Jr., for defendant appellant.*

SHARP, Chief Justice.

On his appeal to the Court of Appeals and to this Court defendant has presented only the question whether the trial court erred in permitting the State to impeach its witness Richie Nelson Pope by introducing evidence that he had made prior statements which contradicted his testimony.

Disregarding the prior inconsistent statements Richie himself admitted having made (which were not substantive evidence), his testimony as to the theft of the heat pump is as follows. On direct examination he said, "I did not go with my father anywhere on Morganton Road on January 3, 1974. . . . I have never been to a dwelling owned by O. J. Garrison on Morganton Road." On cross-examination he said, "I never denied

to the Sheriff or any of the officers that I did not steal it. In fact, I pled guilty. My father did not have any part in it; he did not go with me and steal any of the air-conditioning units. I don't deny that I did it myself."

[1] It remains the general rule in this jurisdiction that the solicitor (or district attorney) may not impeach a State's witness by evidence that the character of the witness is bad or that he has made prior statements inconsistent with or contradictory of his testimony. *State v. Anderson,* 283 N.C. 218, 195 S.E. 2d 561 (1973); *State v. Tilley,* 239 N.C. 245, 79 S.E. 2d 473 (1954); *see* 1 Stansbury's North Carolina Evidence (Brandis Rev., 1973) § 40.

[2] Although it is quite clear that on cross-examination Richie was testifying as a defense witness, bent upon exonerating defendant of the charge for which he was being tried, he remained the witness of the State, which had called him. *See State v. Tilley, supra;* 1 Stansbury's North Carolina Evidence § 41 (Brandis Rev. 1973); McCormick on Evidence § 38 (1972); 98 C.J.S., *Witnesses* § 578 i. (1957). Therefore under the anti-impeachment rule Sheriff Wimberly's testimony that on the night Richie was arrested he told him "he stayed in the vehicle, and that his daddy and Larry Martin went to the house, brought this unit back through the woods and come back . . . . " was incompetent. This testimony, however, was given before any objection to it was interposed. When the objection interrupted the statement quoted above (as shown by the dots) it was at once "sustained as to that." Defendant made no motion to strike "that," and the judge gave the jury no instruction to disregard "that." Immediately thereafter, in answer to specific questions to which no objection was made, the Sheriff testified that Richie also told him that the unit was put in the trunk of the car; that "they" took it into Southern Pines and left it; that it was later moved to his father's house; and that "he was nervous when they were moving it because he was involved." This evidence was likewise incompetent.

[3] Notwithstanding the incompetency of that portion of Sheriff Wimberly's testimony set out in the preceding paragraph the court's refusal "to strike his entire testimony," is sustainable on two grounds:

First, when no objection is interposed to an incompetent question at the time it is asked, a motion to strike the answer

State v. Pope

is addressed to the trial judge's discretion and his ruling is not subject to review in the absence of abuse. *State v. Hunt,* 223 N.C. 173, 176, 25 S.E. 2d 598, 600 (1943); *State v. Merrick,* 172 N.C. 870, 90 S.E. 257 (1916); *State v. Lewis,* 281 N.C. 564, 189 S.E. 2d 216 (1972); 7 N.C. Index 2d, *Trial* § 15 (1968).

As noted in *Bryant v. Construction Company,* 197 N.C. 639, 641-642, 150 S.E. 122, 123-124 (1929), motions to strike the answer elicited by a question to which no objection was made "are often allowed when the answer is not responsive to the question and contains prejudicial testimony of fact concerning which the objecting party was not put on notice. But when the answer is directly responsive it will usually be permitted to stand unless in apt time objection was made to the question propounded." In *Dobson v. R. R.,* 132 N.C. 900, 901, 44 S.E. 593, 594 (1903), it is said: "Objection should be interposed when the incompetent questions are asked. It will not do to object after the question has been asked and answered. This would give the objector two chances, one to exclude the testimony if unfavorable to him and the other to make use of it if favorable; and for this reason the law requires that parties should act promptly or else the right to have testimony excluded, or the examination conducted within proper limits, will be waived."

Second, as pointed out in the opinion of the Court of Appeals, where only a portion of a witness's testimony is incompetent, the party moving to strike should specify the objectionable part and move to strike it alone. *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968); *State v. Tyson,* 242 N.C. 574, 89 S.E. 2d 138 (1955). In the preliminary statement of facts the objectionable portions of Sheriff Wimberly's testimony is quoted; all other portions were competent. When defendant moved to strike the Sheriff's entire testimony, the court, in its discretion, could have stricken the incompetent evidence. It was, however, under no duty to separate the good from the bad. *Nance v. Telegraph Co.,* 177 N.C. 313, 98 S.E. 838 (1919). Under these circumstances the court will ordinarily deny the motion. *See* 88 C.J.S., *Trial* § 143 (1955).

Our decisions dictate the conclusion that defendant has shown no reversible error in the trial below.

[4] Although the State made no attempt to invoke its application in this case, and it is not pertinent to decision here, the

evidence merits examination of a generally recognized exception or corollary to the anti-impeachment rule which does not seem to have been the subject of discussion in our decisions. This corollary allows impeachment "where the party calling the witness has been misled and surprised or entrapped to his prejudice." *Green v. State,* 243 Md. 154, 157, 220 A. 2d 544, 546 (1966); *State v. Green,* 71 Wash. 2d 372, 428 P. 2d 540 (1967); 98 C.J.S., *Witnesses* § 578 c (1) (1957); 58 Am. Jur., *Witnesses* § 799 (1948).

Our decisions, in holding that the State cannot impeach its own witness, also hold that the State is not bound by what the witness says. The State's attorney, therefore, may show by other witnesses or other competent evidence that the facts are different from those to which the witness has testified. The trial judge also has the discretionary power to permit a prosecuting attorney who has been surprised by the testimony of an evasive or hostile witness to call his attention to his prior inconsistent statements for the purpose of "refreshing his memory" or "awakening his conscience." McCormick on Evidence § 38 (1972); *State v. Tilley,* 239 N.C. at 251, 79 S.E. 2d at 477. (Clearly, this is what the solicitor attemped to do in this case.)

In a situation where the witness has treacherously induced the State to call him by representing that he will give testimony favorable to its contentions and then surprises the solicitor with testimony contra, cross-examination is not likely either to "refresh his memory" or "awaken his conscience." In such instances the reason for the corollary to the anti-impeachment rule is demonstrated: "It would be grossly unfair to permit a witness to entrap a party into calling him by making a statement favorable to that party's contention, and then, when he is called and accredited by that party and gives testimony at variance with his previous statement and against that party's interest, to deny the party calling him the right to show that he was induced to do so by a previous statement of the witness made under such circumstances as to warrant a reasonable belief that the witness would repeat the statement when called to testify." 58 Am. Jur., *Witnesses* § 799 (1948); *see Murphy v. State,* 120 Md. 229, 233, 87 A. 811, 812 (1913).

Surprise or entrapment, however, will not automatically invoke the anti-impeachment corollary. The State's motion to be allowed to impeach its own witness by proof of his prior inconsistent statements is addressed to the sound discretion of

the trial court. The motion should be made as soon as the prosecuting attorney is surprised. He may not wait until subsequent "surprises" follow. Further, surprise does not mean mere disappointment; it means "taken (captured) unawares." *Selden v. Metropolitan Life Ins. Co.,* 157 Pa. Super. 500, 43 A. 2d 571 (1945).

Before granting the motion the court must be satisfied that the State's attorney has been misled and surprised by the witness, whose testimony as to a material fact is contrary to what the State had a *right* to expect. These preliminary questions are determined by the court upon a *voir dire* hearing in the absence of the jury in the manner in which the admissibility of a confession is ascertained after objection. If the trial judge finds that the State should be allowed to offer prior inconsistent statements, his findings should also specify the extent to which such statements may be offered. *Green v. State, supra; Sellman v. State,* 232 Md. 344, 192 A. 2d 788 (1963); 58 Am. Jur. *Witnesses* § 800 (1948).

[5] The right to prove prior oral inconsistent statements is limited to statements made by the witness to the State's attorney or to some person whom he specifically instructed to communicate the statement to the attorney. *Sellman v. State, supra; State v. Baltimore Contracting Co.,* 177 Md. 1, 6 A. 2d 625 (1939); *Riggins v. State,* 67 Ga. App. 309, 20 S.E. 2d 95 (1942); *Allen v. State,* 71 Ga. App. 517, 31 S.E. 2d 107 (1944). However, where investigating officers, whose duty it is to seek, find, preserve and analyze evidence of criminal offenses and turn it over to the prosecuting attorney for ultimate legal action, have furnished him with formally prepared, signed or acknowledged statements of witnesses, he may rely on these statements unless he possesses other information which reasonably apprises him that they were false or that the witness making them intends to repudiate them. *State v. Green,* 71 Wash. 2d 372, 379, 428 P. 2d 540, 545 (1967); *Commonwealth v. Smith,* 178 Pa. Super. 251, 115 A. 2d 782 (1955).

While the cases cited in the preceding paragraph hold that the State's attorney can legitimately claim surprise in the instances above specified albeit he himself does not interview the witness before calling him to the stand, in our view the better practice, and the only safe rule, is "never to call a witness to whom you have not talked."

Where the prosecuting attorney knows at the time the witness is called that he has retracted or disavowed his statement, or has reason to believe that he will do so if called upon to testify, he will not be permitted to impeach the witness. He must first show that he has been genuinely "surprised or taken unawares" by testimony which differed in material respects from the witness's prior statements, which he had no reason to assume the witness would repudiate. *Commonwealth v. Smith, supra; State v. Green, supra; State v. Baltimore Contracting Co., supra; Perrotti v. Sampson,* 163 C.A. 2d 280, 329 P. 2d 310 (1958) ; 98 C.J.S., *Witnesses* § 578 c. (2) (1957) ; *see State v. Anderson, supra.*

Testimony tending to show a witness's prior inconsistent statements is admitted only to show that the State was surprised by his testimony and to explain why the witness was called. Such statements "are not probative evidence on the merits and are not to be treated as having any substantive or independent testimonial value." *Green v. State,* 243 Md. 154, 158, 220 A. 2d 544, 546. Their only effect is to impeach the credibility of the witness. *State v. Green, supra; see* 58 Am. Jur., *Witnesses* § 804 (1948).

In this case, although the evidence of Richie's prior contradictory statements came in without objection and were not admissible under the corollary or exception to the anti-impeachment rule, the trial judge carefully instructed the jury that Sheriff Wimberly's testimony as to those statements was not substantive evidence; that it was not evidence defendant had committed the offense with which he was charged; that the jury could consider the statements only as bearing upon the credibility of the witness Richie Pope, "in determining whether to believe his testimony or not."

Our consideration of the record in this case convinces us that, aside from the non-substantive evidence of Richie's prior inconsistent statements, substantive evidence supports defendant's conviction of the crime with which he was charged and that his trial contains no reversible error. The decision of the Court of Appeals is

Affirmed.