State v. Boyd

STATE OF NORTH CAROLINA v. JOSEPH THOMAS BOYD

No. 775SC893

(Filed 4 April 1978)

1. **Criminal Law § 90.2— State's impeachment of own witness**

   The trial court in an armed robbery case did not err in permitting the State to impeach its own witness who testified that he believed defendant was not the man who committed the robbery where the witness had told the assistant district attorney who was handling the case that he would inform him if he decided defendant was not the man, but the witness did not so inform the assistant district attorney before taking the stand.

2. **Criminal Law § 90.2— motion to impeach own witness—when made**

   The State's motion to examine its own witness as an adverse witness on redirect examination of the witness did not come too late since the State's passing of the witness to defendant did not negate the existence of surprise.

3. **Criminal Law § 90.2— motion to impeach own witness—voir dire—failure to find facts**

   Defendant was not prejudicied by the failure of the trial court to make findings of fact after the *voir dire* hearing on the State's motion to examine its own witness as an adverse witness where the evidence on *voir dire* clearly established that the State was surprised by the witness's testimony.

4. **Criminal Law § 99.9— examination of witness by court—reasons for witness's change of mind**

   The trial judge in an armed robbery case did not express an opinion in violation of G.S. 1-180 when he questioned a witness as to whether he had been certain before trial that defendant was the robber and as to the features of defendant which caused the witness to decide during the trial that defendant was not the robber.

5. **Criminal Law § 114.2— instructions—corroboration of defense witness**

   Defendant was not prejudiced by the trial court's instruction that the testimony of defendant's alibi witness was "in some degree" corroborated by two of defendant's other witnesses.

6. **Criminal Law § 113.1— witnesses' uncertainty that defendant was robber—instructions supported by evidence**

   The evidence supported instructions by the trial court that a witness testified that although the defendant bore "considerable resemblance" to the robber, she was not certain that he was the robber, and that another witness was "uncertain" as to whether defendant was the one who committed the robbery.

APPEAL by defendant from *James, Judge.* Judgment entered 4 May 1976, in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 1 March 1978.

Defendant, indicted on four counts of armed robbery and two counts of attempted armed robbery, waived arraignment, entered a plea of not guilty to all six counts, and the cases were joined for trial. The State's evidence tended to show that at approximately 7:40 p.m. on 29 January 1976, defendant entered New Hanover Farmer's Market, pulled out a sawed-off shotgun and demanded money from those present. Anna Pickett, an employee of the market, positively identified the defendant as being the man who came into the store and to whom she gave money from the cash register. Joseph N. Kentrolis, owner of the market, and John Henry Allen also positively identified defendant. Alan Dale Strickland, the fourth witness for the State, and one of the alleged victims of the attempted robbery, testified that he "firmly believe[d]" that defendant was not the man who attempted to rob him and who robbed the other victims.

Defendant put on evidence tending to show that he was at New Hanover Memorial Hospital with Ethel Council from approximately 7:40 p.m. to 8:00 p.m. on the day in question. With the exception of ten minutes when defendant was in the Ebony Club, he and Ethel Council remained together the remainder of the night. Liston Thompkins, Jr., another of the alleged victims of armed robbery, testified that defendant was "not the man that was present in the store that night with the shotgun." Vera Garner, who was also present during the robberies and attempted robberies, stated that, although defendant resembled the man in the store, she would not say for sure that defendant was the man.

The jury returned a verdict of guilty as charged to all counts. Defendant appeals.

*Attorney General Edmisten, by Associate Attorney Kaye R. Webb, for the State.*

*James K. Larrick for defendant appellant.*

ARNOLD, Judge.

[1]  After the State's witness Alan Strickland testified that he firmly believed defendant Boyd was not the man who robbed him at New Hanover Market, Strickland was cross-examined by defendant's counsel. On redirect examination, the State attempted to impeach the credibility of its own witness, and defendant ob-

jected. A *voir dire* hearing was held, and Strickland stated that he had told the Assistant District Attorney that morning that he would tell him if defendant was not the man who committed the robberies, and that he had not told him prior to his taking the stand. Strickland further stated that he was not sure that defendant was not the man until he took the witness stand. At the close of the *voir dire* the court ruled that the State could examine Strickland as an adverse witness. Defendant contends that the court erred in this ruling. We disagree.

Our Supreme Court, in *State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975), examined the generally recognized exception to the rule that the solicitor (or district attorney) may not impeach a State's witness by evidence that the witness has made prior statements inconsistent with his testimony. The exception allows impeachment "where the party calling the witness has been misled and surprised or entrapped to his prejudice." *State v. Pope, supra* at 512, 215 S.E. 2d at 144, *quoting Green v. State*, 243 Md. 154, 157, 220 A. 2d 544, 546 (1966). Our Supreme Court, in discussing the exception to the anti-impeachment rule, stated:

> "Surprise or entrapment, however, will not automatically invoke the anti-impeachment corollary. The State's motion to be allowed to impeach its own witness by proof of his prior inconsistent statements is addressed to the sound discretion of the trial court. The motion should be made as soon as the prosecuting attorney is surprised. He may not wait until subsequent 'surprises' follow. . . .

> "Before granting the motion the court must be satisfied that the State's attorney has been misled and surprised by the witness, whose testimony as to a material fact is contrary to what the State had a *right* to expect. These preliminary questions are determined by the court upon a *voir dire* hearing in the absence of the jury in the manner in which the admissibility of a confession is ascertained after objection. If the trial judge finds that the State should be allowed to offer prior inconsistent statements, his findings should also specify the extent to which such statements may be offered."

287 N.C. at 512-13, 215 S.E. 2d at 145.

[2] Defendant argues that our Supreme Court thereby established a procedural framework for invoking the exception to the anti-impeachment rule and that the State failed to follow it in the instant case. First, defendant argues, instead of passing the witness to defendant for cross-examination the State should have moved to examine Strickland as an adverse witness on direct, and that the motion came too late on redirect examination. During *voir dire*, however, Strickland stated that he had told the assistant district attorney who was handling the case that he would inform him if he decided defendant was not the man. We do not believe that the State's passing the witness to defendant negated the existence of surprise, and we find no error in the discretionary ruling by the trial court to allow the State's motion.

[3] Defendant next argues that the court erred in not making findings of fact after the *voir dire* hearing. The evidence on the *voir dire*, however, clearly established the surprise of the State so that we see no prejudicial error in the court's failure to state a finding of surprise. While the trial court might have stated the extent to which the inconsistent statements were offered, we can find no prejudicial error in the court's failure to do so.

[4] The second assignment of error brought forth by defendant is that the court erred in its own questioning of Alan Dale Strickland. We have reviewed pertinent parts of the record and find nothing improper in the court's questions. The trial court may ask questions of witnesses which may aid in clarifying the witness's testimony and which are not prejudicial to either party. *See, e.g. State v. Bunton*, 27 N.C. App. 704, 220 S.E. 2d 354 (1975). The following excerpt from the record contains the portions to which defendant took exception. Mr. Strickland stated, on redirect examination:

"As to what feature about the defendant or about the individual who had the shotgun on the 29th of January, what features did I notice that I felt would assist me in being able to recognize him if I saw him again, I say he had a wool like toboggan sitting on the top part of his head pulled down. He had three to four teeth out. Small moustache maybe to the side of his upper lip. He was short and he had on a long green like a Marine field jacket on. This morning after I first

saw the defendant I did not have a conversation with Det. Wolak. I spoke to him over here on the bench. He did not ask me a question about this defendant. He did not speak directly to me but he was speaking to all of us, Mr. Kentrolis and Anna Pickett, and he looked right at me and I nodded my head too. I shook my head like that.

"Q. Indicating that you did recognize him?

"MR. LARRICK: Object.

"A. At that moment, yes sir.

"MR. LARRICK: I object.

"COURT: What did you mean to indicate by nodding your head?

"A. At that time 'Yes'.

"COURT: Yes what?

"EXCEPTION No. 4.

"A. That he was the person.

"COURT: Go ahead.

"I did say that I was a friend of Charles Kentrolis. I had not been working on this particular day, the 29th of January. I had been at Castle Hayne before I went out to the fruit stand. I was at the Shamrock Grill at Castle Hayne. The Shamrock Grill. I did not have anything to drink while I was there. I met him there.

"RECROSS EXAMINATION by Mr. Larrick:

"My personal opinion as to how tall the man was that committed the robbery was that he was a couple of inches taller than I am. I am five foot five inches. That would make the man approximately five foot seven. His hair was about the same length as this gentleman here.

"COURT: For clarification, Mr. Strickland, this Court and this jury may not be clear as to what you are or are not saying so let me ask you this. This morning before the trial began were you then certain that this defendant was the

man who committed the robbery or not? Were you then certain or not?

"EXCEPTION NO. 5.

"A. At the time, yes. The more I looked at the man the more I thought about it. I am not sure. I can't say positively.

"COURT: So you are not saying you have now changed your mind.

"EXCEPTION NO. 6.

"A. No, sir. I am saying that I don't think this is the man that robbed the store.

"COURT: And what are the features that you say that you based your opinion upon that this is not the man?

"EXCEPTION NO. 7.

"A. Yes, sir.

"COURT: I say what is it you base your opinion upon?

"EXCEPTION NO. 8.

"A. He does not have a real flat nose.

"COURT: Anything else?

"EXCEPTION NO. 9.

"A. His height.

"COURT: What about that?

"EXCEPTION NO. 10.

"A. He is too tall.

"MR. LARRICK: Could I clarify that for the record. Who is too tall? What do you mean by that?

"A. The gentleman that robbed the fruit stand is shorter than this gentleman here.

"COURT: Have you seen this man with his shoes standing up this morning?

"EXCEPTION NO. 11.

State v. Boyd

"A. Yes, sir. When I first saw him this morning he was sitting in the far bench over there.

"COURT: Come around again and let him look at you again. Stand right there. And you see what kind of shoes he has got on, how high or how low they are. You can estimate what his height would be without his shoes on. What do you say about it?

"EXCEPTION NO. 12.

"A. I still say he is too tall.

"COURT: All right. That is all. You may come down.

"WITNESS EXCUSED."

We find nothing here which amounts to the trial court's expression of an opinion in violation of G.S. 1-180.

[5] The defendant's final assignment of error, that the court erred in its charge by misstating material facts not in evidence and by expressing an opinion in violation of G.S. 1-180, is also without merit. The first charge to which defendant excepts is the trial court's summary that the testimony of defendant's witness, Ethel Council (establishing an alibi), was "in some degree" corroborated by two of defendant's other witnesses. Defendant cites *State v. Byrd*, 10 N.C. App. 56, 177 S.E. 2d 738 (1970), for the proposition that the question of whether the testimony of one witness corroborates that of another is a question of fact for the jury. In that case, however, a new trial was ordered because the trial court instructed that the testimony of the State's prosecuting witness was corroborated by another witness. In the instant case the trial court stated that the testimony of defendant's witness who established an alibi for defendant was corroborated by another of defendant's witnesses—a statement which inured to the benefit of defendant.

[6] The second portion of the court's charge to which defendant took exception was a summary of Vera Garner's testimony that "although the defendant bore considerable resemblance that she could not say and was not certain" that he was the man committing the robberies. We find no assumption by the trial court of evidence totally unsupported by the record, and we do not find that use of the word "considerable" prejudiced the defendant.

The final portion of the court's charge to which defendant objected is its summary of the testimony of Alan Dale Strickland:

"Now, to the testimony of the witnesses presented by the State but who testified that the defendant was not the man, that is the testimony of Alan Dale Strickland, who testified in substance that the person committing the acts was nervous and he got a good look at him, he had a moustache, a bushy haircut, a goatee, but that the defendant here charged is not the man who committed the acts, [that witness spoke a little less uncertain, that he simply did not know for certain one way or the other].

"To the foregoing portion of the Charge in brackets, the defendant excepts.

EXCEPTION NO. 17"

We think the record supports the part of the charge that Strickland was uncertain as to whether defendant was the one who committed the robbery. He stated that he did not think defendant was the robber but that at another time he had identified defendant as the robber. Taken in its full context, we find no prejudicial error to defendant.

No error.

Judges PARKER and MARTIN concur.