STATE OF NORTH CAROLINA v. ANDREW McDONALD

No. 278A83

(Filed 6 November 1984)

1. Criminal Law § 90— impeachment of State's witness by State—prior inconsistent statement

The trial court did not abuse its discretion by declaring a State's witness to be hostile and permitting the State to impeach him through the use of prior inconsistent statements where there was evidence to support the trial judge's finding that the State had a "right to expect" that the witness would not repudiate his pretrial statements and was therefore "surprised" by his testimony at trial.

2. Searches and Seizures § 23— search warrant—affidavit sufficient

The trial court did not err by denying defendant's motion to suppress evidence obtained pursuant to a search warrant where the information con-

State v. McDonald

tained in the affidavit was obtained from numerous named sources as well as the independent investigation conducted by the affiant, and where the information supplied by the named individuals was remarkably consistent and was in turn corroborated by the results of the law enforcement officers' investigation.

**3. Criminal Law § 42.6— chain of custody—evidence sufficient**

The State showed a sufficient chain of custody to permit the introduction of a red emergency room bag, a pair of pants, and a coat where there was testimony that the coat and pants were worn by the victim the night he was attacked, that the coat was placed in the bag by an emergency room nurse at Cabarrus County Hospital, that an ambulance attendant transported the bag to Charlotte Memorial Hospital, that defendant was wearing the pants upon his arrival at the Charlotte Hospital, that a patient representative and secretary at the Charlotte Hospital retrieved the bag from the emergency room and found that it contained the coat and pants, that the bag and its contents were given to a detective who mailed them to the S.B.I. for analysis, and that the bag and clothing were returned from the S.B.I. to the police evidence locker.

**4. Homicide § 21— first degree murder—motion to dismiss—evidence sufficient**

Defendant's motion to dismiss the charge of first degree murder was properly denied where there was substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the crime.

APPEAL by defendant from *Judge Long* at the 31 January 1983 Session of CABARRUS County Superior Court.

Defendant was charged in an indictment, proper in form, with the first-degree murder of Calvin E. Smith. He entered a plea of not guilty to the offense charged.

The State offered evidence tending to show that on the evening of 3 April 1982 the victim, Calvin Smith, was operating a pool hall in Concord, North Carolina. At around 11:00 p.m. Smith closed the establishment for the night and prepared to drive to his home a few blocks away. He had in his possession several bank bags which contained the night's receipts.

The victim's wife, Mattie Smith, testified that she heard her husband pull into the driveway sometime between 11:30 and 12:00 that night. When her husband did not come into the house after a few moments, Mrs. Smith went to the front door and turned on the porch light. Just as she reached the door, she heard several shots and saw her husband fall to the ground. She immediately ran to the telephone to call the police and her daughter.

The police arrived at the Smith residence around midnight. Lieutenant Sheppard testified that Smith was coherent and was able to respond to the officers' questions. Smith stated that he had been attacked from behind by someone he did not recognize. The assailant had taken his gun and the moneybags. The police conducted a search of the front yard and located several bank bags, a yellow plastic table leg broken in two pieces, some loose change and some keys.

Emergency personnel arrived at approximately 12:05 a.m. Smith was transported to Cabarrus Memorial Hospital and, shortly thereafter, was removed to Charlotte Memorial. He died in the emergency room of the Charlotte hospital early Sunday morning. An autopsy revealed that he died from a gunshot wound to the head.

The State presented the testimony of Robert Moose. He remembered seeing defendant outside the pool hall shortly before it closed on 3 April 1982. Moose overheard defendant remark to his companion, Daniel Benton, that he needed some money and that "My man is asleep. He's got a pouch on his lap." Moose noted that at the time defendant made this statement Calvin Smith was asleep in a chair in the pool hall with a bank bag on his lap. Moose's sister, Teresa, also testified that she saw defendant and Benton in the area of the pool hall at approximately 11:20 p.m. on 3 April.

On 4 April 1982, Detective Dennis Andrade obtained a search warrant to search defendant's home. As a result of the search, the police obtained a black coat and a straw hat which matched the description of the clothing worn by defendant on the night of 3 April.

John Bendura, an expert in fiber identification with the State Bureau of Investigation, examined the clothes worn by the victim on the night of the murder, scrapings removed from the victim's fingernails, the black coat obtained from the search of defendant's home and the yellow chair leg which had been found at the crime scene. His comparison of these objects revealed that numerous fibers on the victim's green jacket "could have come from the same source" as the material in the black coat recovered from defendant's home. According to Bendura, these fibers were unique in shape and color. Bendura further testified that fibers

removed from the victim's fingernails matched and could have come from the same source as the black coat, and that a white fiber found on the yellow chair leg was consistent with and could have come from the polyester lining inside the coat. Finally, a red fiber located on defendant's coat was consistent with the material in the lining of the victim's jacket.

Francis Doster was employed by The Trading Post, a store in Concord, North Carolina, during the month of February 1982. Doster testified that defendant came into the store in February wearing a black coat similar to the one identified as being worn by him on the night of 3 April. Doster observed a bulge in the coat and noticed what appeared to be the end of a club protruding from the bottom of it. The coat recovered from defendant's home on 4 April had an opening cut in the lining which would accommodate a club of the type found near Smith's body at the crime scene.

Daniel Benton was called as a witness for the State. Earlier on 4 April 1982, Benton had given a statement to Detective Andrade in which he admitted being with defendant on the night of the murder until around 10:00 p.m. He also told the detective that defendant had made several remarks about robbing the victim and that he observed a "bulge" in defendant's black suede coat. Benton testified at trial, however, that he and defendant passed the pool hall at around 11:00 p.m. on their way to a college dance, but that defendant said nothing about robbing Calvin Smith. He also denied that defendant was carrying anything noticeable under his coat. When Benton began delivering this "changed" testimony, the trial court granted the State's motion for a *voir dire* hearing. After hearing testimony from Daniel Benton and Detective Andrade out of the presence of the jury, the trial court found as a fact that the State was surprised by the change in Benton's testimony and allowed the prosecutor to impeach Benton by introducing into evidence the prior inconsistent statement.

Defendant offered the testimony of Dennis Stark, an employee at a local clothing store. Stark testified that the store carried jackets identical to that recovered from defendant's home by police on 4 April. He stated that at one time the store had about forty-five similar jackets in stock and that he had himself sold at least two of them.

Defendant also took the stand and testified that he did not see Robert or Teresa Moose on the night of 3 April. He stated that around 10:00 p.m. he went to a dance with Benton at Barber Scotia College where he remained until about 1:00 a.m. He specifically denied making statements to the effect that he planned to rob Calvin Smith and disclaimed any knowledge of the robbery and murder.

Finally, defendant presented the testimony of Evans Wilson, Jr., who stated that he saw defendant at the dance at Barber Scotia College between 11:30 p.m. and midnight on 3 April 1982.

Defendant was convicted of first-degree murder in perpetration of a felony.

The trial court conducted a sentencing hearing as required by N.C.G.S. 15A-2000 *et seq.* before the same jury. The jury was, however, unable to agree as to its sentencing recommendation and in accordance with N.C.G.S. 15A-2000(b), the trial judge imposed a sentence of life imprisonment.

Defendant appealed to this Court as a matter of right pursuant to N.C.G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Christopher P. Brewer, Assistant Attorney General, for the State.*

*William D. Arrowood and Edwin H. Ferguson, Jr., for defendant-appellant.*

BRANCH, Chief Justice.

Defendant's first, second, third and seventh assignments of error will be considered together as each involves the same issue of law, that is, whether the trial court erred in permitting the State to impeach its witness Daniel Benton by his prior inconsistent statements. Specifically, defendant contends the trial judge's finding that the State was "surprised" by the change in Benton's testimony at trial is unsupported by the evidence.

[1] The general rule of law applicable to this case is that the State may not impeach its own witness through the use of prior

inconsistent statements.[1] *See State v. Cope*, 309 N.C. 47, 305 S.E. 2d 676 (1983); *State v. Anderson*, 283 N.C. 218, 195 S.E. 2d 561 (1973); *State v. Tilley*, 239 N.C. 245, 79 S.E. 2d 473 (1954). An exception to this rule, recognized in *State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975), allows the State to impeach its own witness when the district attorney "has been misled and surprised by the witness, whose testimony as to a material fact is contrary to what the State had a *right* to expect." *Id.* at 513, 215 S.E. 2d at 145 (emphasis in original). "Surprise" means more than "mere disappointment"; in this context it is defined as *"taken unawares."* *State v. Smith*, 289 N.C. 143, 158, 221 S.E. 2d 247, 256 (1976) (emphasis in original).

In *Pope*, the Court set forth a procedure which should be followed when the State seeks to invoke the "surprise" exception to the anti-impeachment rule. This procedure was summarized by Justice Exum in the recent case of *State v. Cope*, 309 N.C. 47, 305 S.E. 2d 676 (1983) as follows:

(1) The state should move "to be allowed to impeach its own witness by proof of his prior inconsistent statements"; (2) the motion should be made as soon as the prosecutor is surprised; (3) the motion "is addressed to the sound discretion of the trial court"; (4) the preliminary questions of whether the prosecutor is surprised and misled as to the witness's expected testimony on a material fact is to be determined in a *voir dire* hearing in the absence of the jury; and (5) "[i]f the trial judge finds that the State should be allowed to offer prior inconsistent statements, his findings should also specify the extent to which such statements may be offered." 287 N.C. at 512-13, 215 S.E. 2d at 145. The Court in *Pope* further noted that prior inconsistent statements are not substantive evidence and are only admitted to show the prosecutor was

1. The new North Carolina Rules of Evidence, which became effective 1 July 1984 and which are fully applicable to all proceedings *commenced after that date*, effect a change in this long-standing anti-impeachment rule. Rule 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." N.C. Gen. Stat. § 8C-1, Rule 607 (Cum. Supp. 1983). The trial in the instant case began in January 1983 and therefore we apply the rule that a party may not impeach his own witness by evidence of prior inconsistent or contradictory statements, unless the party is surprised and has been misled as to the witness's expected testimony. *State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975).

surprised by the witness's testimony at trial and to explain why the witness was called by the state. *Id.* at 514, 215 S.E. 2d at 146. Finally, in keeping with the limited purpose for which the prior inconsistent statements may be offered, *Pope* said only statements "made . . . to the State's attorney or to some person whom he specifically instructed to communicate the statement to the attorney" or statements taken in writing by official investigators and furnished to the state's attorney may be used to impeach the witness. *Id.* at 513, 215 S.E. 2d at 145.

309 N.C. at 51, 305 S.E. 2d at 679.

The record reveals that these suggested procedures were scrupulously followed in this case.

The State moved to impeach its own witness, Daniel Benton, as soon as it became clear that the witness had definitely changed his testimony. Judge Long then conducted a *voir dire* hearing to determine whether the prosecutor was surprised or misled as to the witness's expected testimony. At the conclusion of the *voir dire* hearing and after arguments of counsel, the State's motion to impeach the witness Benton was allowed by the court. Judge Long set forth his findings of fact on the issue of "surprise" as follows:

Let the record show that the Court finds as a fact that the State was surprised by the change in the statements of the witness, Daniel Benton, and that although the State had been told in open court by defense counsel that defendant had made an inconsistent statement [to them] prior to trial, the State was led to believe as recently as a week before trial *and even during trial* by statements of the defendant that he would testify as he had previously given information to the police officer, and that the State *reasonably believed* that the witness would repeat his earlier statements to the officer. And, therefore, the Court would allow impeachment of the witness by showing prior inconsistent statements. However, those statements may not be admitted as substantive evidence, but only as impeachment evidence that is to show or to demonstrate to the jury why the witness was called and the surprise of the State and to refresh his

memory as to the events which may have occurred on the date or evening in question.

Record, Vol. II at 203-04 (emphasis added).

Our review of the transcript reveals evidence sufficient to support the trial judge's finding that the State had a "right to expect" that the witness Benton would not repudiate his pretrial statements and was therefore "surprised" by his testimony at trial.

Admittedly, at the pretrial hearing on a motion to sequester witnesses the State was informed by defense counsel that Benton had given a statement to defense attorneys which was inconsistent with previous statements he had given to Detective Andrade. For this reason, the trial judge granted defendant's motion to sequester Benton. We are convinced, however, that after learning of Benton's contradictory statement, the State made a diligent effort to determine if Benton intended to change his trial testimony and, as a result of those efforts, reasonably concluded that he would offer testimony consistent with the numerous statements previously given to police officials. Most significantly, during the trial at a lunch recess on the afternoon he was called to testify, Benton reviewed the specifics of his prior statements with the prosecutor and Detective Andrade. At that time, Benton indicated he could utilize a diagram the district attorney had prepared to point out specific locations and to clarify certain matters about which he would be testifying. Defendant himself admitted on *voir dire* that he was still reaffirming his prior statements to "Andrade just before court convened at 2:00" on the day he was called to testify. Record, Vol. II at 154-55.

We hold that the trial judge did not abuse his discretion in declaring Benton a hostile witness and permitting the State to impeach him through the use of prior inconsistent statements. These assignments of error are without merit and are overruled.

[2] We next consider defendant's contention that the trial court erred in denying his motion to suppress a black coat and straw hat which were obtained from a search of his home pursuant to a search warrant. He argues that the affidavit submitted in support of the application for the warrant was insufficient to support a finding of probable cause under the test established in *Illinois v.*

*Gates,* --- U.S. ---, 103 S.Ct. 2317, *reh'g denied,* --- U.S. ---, 104 S.Ct. 33 (1983), because the "reliability" and "veracity" of the individuals providing information to the officers was not established.

We first note that defendant's citation to *Illinois v. Gates* is inapposite. In *Gates,* the United States Supreme Court enunciated new legal standards to be applied in evaluating the sufficiency of *confidential informants'* tips to supply probable cause. *See State v. Arrington,* 311 N.C. 633, 319 S.E. 2d 254 (1984). In this case, the affidavit set forth the names and addresses of each individual from whom the police obtained information tending to implicate defendant in the crime charged. Therefore, none of the information contained in the affidavit depended upon the reliability of a *confidential informant* and *Gates* is simply inapplicable.

Furthermore, we have reviewed the affidavit submitted by Detective Andrade in this case and are convinced that the information contained therein was sufficient to support the magistrate's determination of probable cause to search defendant's home.

The information contained in the affidavit revealed that three named individuals who had known defendant for some years saw him in front of the pool hall where the victim worked shortly before closing on the night of 3 April 1982. Two of these individuals told Detective Andrade that defendant said he intended to rob Calvin Smith by surprising him and hitting him over the head. Andrade's own investigation tended to show Smith was robbed in the manner in which defendant had suggested to his companions. Finally, Daniel Benton identified the yellow club found next to the victim's body as belonging to defendant and stated he had seen the club in defendant's bedroom as recently as 2 April 1982.

It is clear, then, that the information contained in the affidavit was obtained from numerous named sources as well as the independent investigation conducted by the affiant. The information supplied by the named individuals was remarkably consistent and was in turn corroborated by the results of the law enforcement officers' investigation.

We therefore hold that the affidavit upon which the search warrant was issued "supplie[d] reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense [would] reveal the presence upon the described premises of the objects sought and that they [would] aid in the apprehension or conviction of the offender." *State v. Vestal,* 278 N.C. 561, 576, 180 S.E. 2d 755, 765 (1971). *See also State v. Jones,* 299 N.C. 298, 261 S.E. 2d 860 (1980); *State v. Riddick,* 291 N.C. 399, 230 S.E. 2d 506 (1976).

[3] By his next assignment of error, defendant challenges the admission into evidence of the coat and pants worn by the victim on the night he was killed and the red emergency room bag containing them on the ground that the State failed to establish a proper chain of custody of these items.

At trial, the State presented the testimony of Mattie Smith, the deceased's wife. She identified the coat and pants as those her husband was wearing on the night of 3 April 1982.

Phyllis Millan, a registered nurse, stated that she was on duty in the emergency room of Cabarrus County Hospital on the night Calvin Smith was brought there by ambulance for treatment. She testified that she observed and supervised the removal of Smith's coat and shirt, placed them in a red emergency room bag and turned them over to the ambulance driver who transported the victim to Charlotte Memorial Hospital. She identified the coat at trial as the one she had removed from Smith in the emergency room.

Pearl Newell testified that she transported Smith by ambulance to Charlotte Memorial. She stated that she received a red emergency room bag at Cabarrus County Hospital and that she delivered it to emergency room personnel at Charlotte Memorial upon her arrival. Ms. Newell described this procedure as routine. She further recalled that the victim was still wearing his pants, shoes and belt upon his arrival at the Charlotte hospital.

The State also offered the testimony of Jenny Campbell, a patient representative at Charlotte Memorial. Ms. Campbell was responsible for the inventory and safekeeping of the personal belongings of patients entering the emergency room. She testified that in the early morning of 5 April 1982, she retrieved from a

cabinet in the emergency room the red bag containing Calvin Smith's clothing. Campbell stated that she took the bag to her office and inventoried its contents. She found that the bag contained a coat, pants, shirt, shoes and belt, although she stated that the contents were not removed from the bag. Ms. Campbell identified the pants and coat at trial as the same items she inventoried on Monday morning.

Vicky Harding, Ms. Campbell's secretary, stated that she assisted Campbell with the inventory. She recalled that the items were never removed from the bag and that she wrote out an inventory list as Ms. Campbell called out a description of each item. The bag was then reclosed and placed in a closet in Campbell's office. Ms. Harding stated that the bag was not removed from the closet until Detective Andrade arrived to take it into police custody.

Finally, Andrade testified that he took the bag and its contents to the Concord Police Department. The items were then mailed to the State Bureau of Investigation in Raleigh for analysis and were returned to the Concord Police Department on 29 April 1982. The bag containing Calvin Smith's clothing remained in the evidence locker at the police department until trial.

Of the above-described items, only the coat, pants and red emergency room bag were admitted into evidence at trial. It was from the victim's coat that the bulk of the fiber evidence implicating defendant in the commission of the crime was obtained.

We are of the opinion that the State showed a sufficient chain of custody to permit the admission into evidence of the red emergency room bag, the pants, the coat and the results of the fiber analyses performed on them. The victim's coat, which contained the damaging fiber evidence, was never removed from the emergency room bag after being placed there at Cabarrus County Hospital. The possibility that these items were materially changed or altered from their condition on the night the crime occurred "is too remote to have required [the trial court to rule] this evidence inadmissible." *State v. Detter*, 298 N.C. 604, 634, 260 S.E. 2d 567, 588 (1979). Any potentially weak links in the chain of custody relate only to the weight to be given this evidence by the jury. *State v. Montgomery*, 291 N.C. 91, 103, 229 S.E. 2d 572, 580 (1976).

State v. McDonald

[4]   Finally, defendant argues the trial court erred in denying his motion to dismiss the charge of first-degree murder for the reason that the evidence was insufficient as a matter of law to identify him as the perpetrator of the offense. In particular, defendant contends the fiber evidence, while admissible, is "the sole evidence of any significant or creditable nature connecting [him] to the crime."

In addressing defendant's argument on this issue, we do not deem it necessary to repeat here the facts of this case. Suffice it to say that the evidence tending to implicate defendant was by no means limited to the testimony offered by the expert in fiber analysis, John Bendura. Applying the familiar test of the sufficiency of the evidence, and considering the evidence in the light most favorable to the State, we find that there is substantial evidence of each essential element of the offense charged and of the defendant's being the perpetrator of the crime. *See State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1983). We therefore hold that the trial judge properly denied defendant's motion to dismiss.

Defendant received a fair trial free of prejudicial error.

No error.