STATE OF NORTH CAROLINA v. JOE LYNN CAIN

No. 8519SC191

(Filed 4 February 1986)

1. **Searches and Seizures § 23— assault—search pursuant to warrant—evidence sufficient for probable cause**

   Defendant's motion to suppress evidence seized pursuant to a search warrant was properly denied where the information contained in the affidavit was sufficient to support the magistrate's determination of probable cause and the findings of the trial court in denying the motion to suppress were supported by plenary competent evidence.

2. **Criminal Law § 66.13— assault—showup in police car—not impermissibly suggestive—counsel not required**

   The trial court did not err in a prosecution for assault and discharge of a firearm into an occupied vehicle by denying defendant's motion to suppress identification testimony obtained from a witness at the scene who later identified defendant in the back of a patrol car. Defendant was not entitled to have counsel present when he was taken into custody as a suspect and shown to the witness because a formal charge had not been levied, and the pretrial identification procedure was not so impermissibly suggestive or conducive to misidentification as to violate defendant's right to due process where the witness observed a man outside a trailer for five to ten seconds from a distance of 15-20 feet; it was 9:00 p.m. and dark outside but the area was illuminated by the lights of an industrial plant on the other side of the highway; a deputy testified that there was enough light left in the parking lot area to read two license plates out the side window of his patrol car from 50 feet away without any additional artificial lighting; the witness testified that light from inside the trailer lit up the outside a little when the door was open; the witness identified defendant as the man he saw with no doubt in his mind; the witness was interviewed less than an hour after the shooting; a deputy observed a man in the trailer who fit the witness's description; that man, defendant, was detained in a patrol car while the witness was brought to the scene; officers bringing the witness to the scene did not suggest to the witness that he ought to pick out the man in the patrol car as the man he saw outside the trailer; an officer asked the witness if he "minded looking at an individual and see if he could identify him"; and the witness looked at defendant for 10-15 seconds, identified defendant, and said there was no doubt in his mind.

3. **Assault and Battery § 14.3— assault—firing into car—evidence sufficient**

   There was sufficient evidence to go to the jury and to convict defendant of assault with a deadly weapon with intent to kill inflicting serious injury where there was substantial evidence from which the jury could reasonably infer that the defendant shot at the victim, an occupant of a car, with a deadly weapon; the evidence that the victim was seriously injured by one of the shots was positive and uncontradicted; and intent to kill could be inferred from defendant's use of a .357 magnum revolver, fired numerous times.

---

State v. Cain

---

**4. Weapons and Firearms § 3— discharging firearm into occupied automobile — evidence sufficient**

There was sufficient evidence from which the jury could reasonably infer that defendant had, without legal justification or excuse, fired a .357 magnum revolver at an occupied Plymouth automobile with two of the bullets entering the vehicle, and with the knowledge that the vehicle was then occupied by one or more persons or with reasonable grounds to believe the vehicle might be so occupied. N.C.G.S. 14-34.1.

**5. Criminal Law § 87.1— assault—leading question—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for assault and discharging a firearm into an occupied automobile by allowing the State to ask a witness if there were any dissimilarities between defendant and the person he had seen by a trailer just before the shooting. The question did tend to lead the witness, but defendant did not demonstrate that the court abused its discretion in allowing the question and the answer.

**6. Assault and Battery § 16.1— lesser included offenses not submitted—no error**

The trial court did not err in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury and for discharging a firearm into an occupied automobile by not instructing the jury on the lesser included offenses of assault with a deadly weapon with intent to kill and assault with a deadly weapon. There was no contradiction in the evidence of the infliction of serious injury or that a deadly weapon was used; the defendant was either guilty of shooting into the car and wounding the girl or he was not guilty.

**7. Criminal Law § 138— two mitigating factors—no aggravating factors—presumptive sentence—no abuse of discretion**

The trial court did not abuse its discretion when sentencing defendant for assault with a deadly weapon with intent to kill inflicting serious injury and for discharging a firearm into an occupied vehicle by imposing the presumptive sentence for each offense even after finding two factors in mitigation and none in aggravation. The question of whether and to what extent to reduce the sentence below the presumptive term upon a finding of one or more mitigating factors and no aggravating factors is within the court's discretion. N.C.G.S. 15A-1340.4, N.C.G.S. 15A-1444(a1).

APPEAL by defendant from *Mills, Judge.* Judgments entered 15 June 1984 in Superior Court, CABARRUS County. Heard in the Court of Appeals 25 September 1985.

*Attorney General Lacy H. Thornburg by Assistant Attorney General Daniel F. McLawhorn for the State.*

*Koontz, Hawkins & Nixon by Timothy M. Hawkins for defendant appellant.*

COZORT, Judge.

Defendant was tried upon proper indictments issued 18 July 1983, charging him with (1) assault with a deadly weapon with intent to kill inflicting serious injury, G.S. 14-32(a), and (2) discharging a firearm into an occupied vehicle, G.S. 14-34.1. Defendant was convicted on both counts. The State's case was based on circumstantial evidence. On appeal, defendant raises six assignments of error, with the most important issues being (1) the trial court's denial of defendant's motion to suppress evidence seized pursuant to a search warrant; (2) the trial court's denial of defendant's motion to suppress a witness's identification of the defendant; (3) the sufficiency of the evidence to go to the jury; and (4) the trial court's imposing the presumptive sentence on each charge after finding two factors in mitigation and no factor in aggravation. We find no error. The facts follow:

During the early evening hours on 30 March 1983, seven people in their late teens or early twenties gathered in Charlotte and decided to drive north on Highway N.C. 49 to the Rocky River bridge in Cabarrus County. They took two cars, with Mike Jones and John Buckley riding together in one car; and David Ross, Hugh Gilbert, Timothy Furr, Lori Coates and Kim Richardson riding in the second, a 1976 four-door Plymouth Volare owned by Ross's mother and driven by Ross on this evening. They bought beer in Charlotte and proceeded up Highway 49. They drove across the Rocky River bridge to the north side of the river and pulled off on the left-hand side of the road in the parking area of what appeared to be an abandoned gas station. Ross pulled in about three feet to the left of a dump truck parked there, and the car containing Jones and Buckley pulled in and parked to the left of Ross's car. At about 8:30 p.m., all seven walked down to the river to a train trestle where they drank beer and talked. They stayed down at the river for about 20 to 30 minutes. Furr and Ms. Richardson went back to the car 5 or 10 minutes before the others.

After everyone had returned to the cars, Furr and Gilbert got out of Ross's car to use the bathroom. Furr went to the back of the dump truck and began urinating, while Gilbert went to the front of the dump truck, which was facing a small trailer parked at the site. Gilbert was facing the door to the trailer. While he

was urinating, a light came on in the trailer, and then the door swung open. A man stepped out and stood 15-20 feet from Gilbert. Gilbert looked at the man for 5-10 seconds. The man was smoking a cigarette. The right side of his face was illuminated by the light shining out the trailer door. At trial, Gilbert identified defendant as the man he saw walk out the trailer door. Gilbert spoke to the man, who went back in the trailer without responding. Gilbert finished urinating and returned to Ross's car. Gilbert and Furr got in the back seat with Ms. Richardson, with Ms. Richardson sitting on the right, Furr in the middle, and Gilbert on the left. Ms. Coates sat in the front seat with Ross. Gilbert told the others he had seen a man out there. Ross was getting the car ignition key out of his wallet when shots started ringing out. The shots were fired about a minute after Gilbert saw the man at the trailer. According to Gilbert, the shots came from the other side of the truck, towards the trailer. There were four or five shots, some of which hit in front of the car. Furr saw dirt flying up in front of the car, visible in the car's headlights. Ross cranked the car and began backing out. As he was backing out, Ross heard more shots and Ms. Coates looked back and saw "a figure on the ground like a cast or a shadow," moving out from behind the truck. She could not make out what it was. Both cars backed out of the parking area and proceeded to go back south on Highway 49 towards Charlotte, with the Ross automobile in the rear. They waited for a van to pass before pulling completely out on the highway.

As the Ross vehicle was going over the Rocky River bridge, more shots came from behind the car from the area where they had been parked. Just before that series of shots, Gilbert looked out the back window and saw a man walk fast from the trailer to the road. He could not tell who it was. He testified he did not notice any dissimilarities between the defendant when he saw him by the trailer and the figure he saw walk to the road. One of the shots came through the back window behind Gilbert, making a hole in the glass. A second bullet hit the rear window behind Ms. Richardson. Ms. Richardson fell into Furr's lap with a wound to her head. Ross drove to a volunteer fire department a couple of miles away. Ms. Richardson was pulled from the car by firemen. Ross observed a gunshot wound to her head.

Cabarrus County Deputy Sheriff C. D. Eggers received a radio dispatch to go to the Harrisburg Volunteer Fire Depart-

ment at 9:19 p.m. on 30 March 1983. After questioning the occupants of the Plymouth, Sergeant Eggers drove north on Highway 49, stopping at the abandoned store building location north of the Rocky River bridge. He observed a camping trailer, an old store building, a pickup truck, a van and a dump truck. There was enough light coming from the Mineral Research Plant across the highway for Sergeant Eggers to read license plates on the vehicles there from 50 feet away without using additional artificial lighting. There was a light on inside the trailer. Sergeant Eggers drove about .1 mile north, turned around, and drove back to within 250 feet of the old store, where he parked his patrol car and began observing the area of the trailer and the store. After about 10 or 15 minutes, a white male came out of the trailer, looked south down Highway 49, then went back inside. He came back out of the trailer, got in the pickup and started north on Highway 49. Sergeant Eggers stopped the pickup .1 mile away at a pull-off that went into the Mineral Research Plant. The defendant was operating the truck. He got out of the truck, was advised of his rights by Sergeant Eggers, and orally waived his rights. In response to a question from Sergeant Eggers about whether there was anyone else at the trailer, the defendant stated, "No, God damn it, there ain't nobody down there, lives down there but me. If you don't believe it, you can go look."

While the defendant was being detained at the Mineral Research Plant, Gilbert was taken to the plant. Gilbert viewed the defendant in the back seat of an officer's car and identified him as the man he saw come out of the trailer.

The defendant was questioned further by Deputy Sheriff R. W. Beaver. He told Deputy Beaver that he was alone in his residence in bed asleep at approximately 9:00 p.m. that night. He told Deputy Beaver that he had fired his Ruger .357 magnum pistol five times while target practicing earlier that day.

The van and the dump truck seen at the trailer were later found to be registered to Joe Lynn Cain, Senior.

Deputy Bobby Bonds searched Ross's car the next morning. He found one lead fragment in the rear deck near the radio speakers. In the front seat he found a deformed copper bullet jacket. Deputy Bonds obtained a search warrant and searched the trailer located near the Rocky River bridge at about 4:30 a.m. on 31

March 1983. He found a Ruger .357 magnum revolver in a holster with six cartridges, a .38 caliber revolver containing five cartridges, a .38 caliber Derringer, 10 spent .357 cartridge cases, and a styrofoam container holding 31, .357 magnum jacketed hollow point cartridges. State Bureau of Investigations Special Agent Robert Cerwin, an expert in firearms examination, identification and classification, testified that it was his opinion that the jacketed bullet found in the front seat of the Plymouth automobile was fired from the Ruger .357 magnum revolver found at the trailer. Dr. Jerry Greenhoot, an expert medical witness specializing in neurosurgery, treated Ms. Richardson. He found a bullet entrance wound in the left temporal region. The bullet traveled through the brain leaving small metallic fragments in the vital structures of the brain along the way. The bullet could not be removed. Ms. Richardson suffered irreparable and permanent brain damage, leaving her unresponsive and completely helpless, never to be a normal person again.

The defendant presented no evidence.

[1] Defendant's first assignment of error is based on the trial court's denial of his motion to suppress evidence seized pursuant to a search warrant issued at 4:00 a.m. on 31 March 1983, about seven hours after Ms. Richardson was shot. Defendant contends specifically that the information in the supporting affidavit is insufficient to establish probable cause for the issuance of a search warrant. He further contends that the findings of fact and conclusions of law of the trial court in its order denying defendant's motion to suppress evidence are not supported by the information and evidence contained in the affidavit of the search warrant.

The application in question reads as follows:

I, B. R. Bonds, Crime Scene Officer, Cabarrus County Sheriff's Department being duly sworn, request that the court issue a warrant to search the person, place, vehicle, and other items described in this application and to find and seize the property and person described in this application. There is probable cause to believe that firearms; to wit; handguns or rifles; ammunition for such weapons, and spent casings Constitutes evidence of a crime and the identity of a crime and the identity of a person participating in a crime, Assault with Deadly Weapon with Intent to Kill, Inflicting Seroius

[*sic*] Bodily Injury, and is located (x) in the following premises a "Volunteer" brand travel trailer, white with brown woodgrain mid-stripe, located at Rt. 2 Box 890, N.C. 49, Harrisburg, N.C., located north of the Rocky River bridge.

The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: At approximately 9:19 p.m., March 30, 1983, the Communication's Center of the Cabarrus County Sheriff's Department, received a radio transmission from the Harrisburg Volunteer Fire Department, Station Number One, N.C. 49 Harrisburg, requesting the Harrisburg Rescue Unit in reference to "someone shot." Cabarrus County Sheriff's Department officers, Sgt. C.D. Eggers, Plt. Tony McQuire and Plt. David Blackwelder were dispatched to the scene.

At 9:26 p.m., Sgt. Eggers arrived at the parking lot of the Norris Food Mart which is located north of the Harrisburg Fire Department, Sgt. Eggers observed a brown, four door 1976 Plymouth Valore, [*sic*] N.C. registration WCN 173 parked in the parking lot of the Norris Food Mart. The rear window of the vehicle had been shattered with two large holes in the rear window. Sgt. Eggers observed a white xxxxx female being removed from the back seat of the vehicle by emergency medical personnel of the Harrisburg Rescue Unit. Sgt. Eggers observed that the female, identified as Kim Richardson, age 15, had received a gunshot wound to the left side of the head.

Sgt. Eggers was advised by a passenger of the vehicle who was identified as Hugh Gilbert, white, male, 20, that the vehicle had stopped off N.C. 49 at Rocky River near the camper. Stated that the occupants had walked down a short distance to the river bridge.

Upon return to the vehicle, Hugh Gilbert and another passenger urinated outside the vehicle. While urinating, Gilbert observed a white male come out of the camper. Gilbert stated that he spoke to the man who just stood there and did not say anything.

Gilbert stated that as he started to get into the car, he heard loud shot like noises in rapid succession.

The operator of the vehicle, identified as David Scott Ross, white, male, age 16, stated that as he started to pull off from the roadside and travel south on N.C. 49, he heard glass break. At that time, he stated the vehicle was headed in the general direction away from the trailer. After he heard the glass break, he heard Kim scream and noticed that the rear window of the car had been shot out. Ross stated that he drove to the fire station for help.

Sgt. Eggers stated that he left the Norris Food Mart and drove to a camper type travel trailer located on N.C. 49 north of the Rocky River bridge. Sgt. Eggers described the trailer as a white camper trailer with a brown mid stripe. Stated that the same was a single axle trailer.

At 9:45 p.m., Sgt. Eggers observed a Chevrolet pick up [sic] truck leave the travel trailer and proceed north on N.C. 49. Sgt. Eggers stopped the vehicle less than one half mile north of the trailer. Sgt. Eggers observed the operator of the truck to be Joe Lynn Cain, W/M.

Sgt. Eggers advised Mr. Cain of his Miranda Rights; Joe Cain orally waived his Miranda Rights and agreed to answer questions. Mr. Cain stated to Sgt. Eggers that he lived alone at the white travel camper trailer located at Rocky River on N.C. 49. Mr. Cain further stated to Sgt. Eggers that he was the only one at the trailer and stated "if you don't believe me, you can go down there and look."

Upon reviewing the application, we find the information contained therein sufficient to support the magistrate's determination of probable cause to search the trailer. As the court found in *State v. McDonald*, 312 N.C. 264, 321 S.E. 2d 849 (1984),

the affidavit upon which the search warrant was issued "supplie[d] reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense [would] reveal the presence upon the described premises of the objects sought and that they [would] aid in the apprehension or conviction of the offender." *State v. Vestal*, 278 N.C. 561, 576, 180 S.E. 2d 755, 765 (1971).

*Id.* at 273, 321 S.E. 2d at 854.

We further find the trial court's order denying the motion to suppress was proper. Facts found by the trial court are conclusive if supported by competent evidence. *State v. Barfield*, 298 N.C. 306, 339, 259 S.E. 2d 510, 535 (1979). We have reviewed the findings of the trial court and find them to be supported by plenary competent evidence. This assignment of error is overruled.

[2]   Defendant next contends that the trial court erred in denying his motion to suppress identification testimony of Hugh Gilbert. Gilbert testified that he saw a white male come out of the trailer 15-20 feet in front of him. While continuing to urinate, he observed the man's face for 5-10 seconds. A few minutes later, after the shooting, Gilbert described the man he saw at the trailer to an officer questioning him at the Harrisburg Volunteer Fire Department. Less than an hour later, the defendant was in custody and was being detained in another officer's car. Gilbert was taken to that location where he identified the defendant, who was sitting in the patrol car, as the man he saw at the trailer. Gilbert also identified the defendant at trial as the man he saw at the trailer. Defendant filed a motion to suppress the identification of him in the patrol car by Gilbert, and to prevent Gilbert from identifying defendant at trial. After conducting a *voir dire*, the trial court allowed the identification evidence at the patrol car and the identification of defendant at trial. On appeal the defendant argues that the trial court erred, contending (1) the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification, (2) the defendant was not advised of his right to have counsel present at a lineup or show-up, (3) the unnecessarily suggestive identification procedure requires the exclusion of later identifications of defendant, and (4) the trial court's findings of fact at the *voir dire* were not supported by the evidence, and the findings of fact do not support the conclusion of law and the denial of defendant's motion.

We first address the issue of no counsel being present at the show-up. Defendant was not entitled to have counsel present when he was taken into custody as a suspect and shown to Gilbert.

The right to counsel attaches upon the initiation of formal prosecution. Prosecution does not begin until a formal charge

has been levied against a suspect by a judicial officer, whether by a finding of probable cause, or by arraignment, indictment, information or preliminary hearing. Custodial arrest of a mere *suspect* does not constitute the initiation of "adversary judicial proceedings" and is not sufficient to draw the State and the prisoner into such an antagonistic relationship as to require the assistance of counsel from that moment forward. [Citations omitted.]

*State v. Matthews,* 295 N.C. 265, 284-85, 245 S.E. 2d 727, 739 (1978) (emphasis in original).

Next, we consider whether the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. We note initially that "the showing of a suspect to a witness while the suspect is in a patrol car beside a policeman is not in and of itself impermissibly suggestive. (Citation omitted.)" *State v. McLain,* 64 N.C. App. 571, 573, 307 S.E. 2d 769, 770 (1983). The test to be used is as follows:

[T]he test is whether the totality of circumstances reveals a pretrial procedure so unnecessarily suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency and justice. [Citation omitted.]

We have held that even if the pretrial procedure is suggestive, that suggestiveness rises to an impermissible level only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification. The factors to be considered in evaluating the likelihood of *irreparable misidentification* include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. [Citation omitted.]

*State v. Grimes,* 309 N.C. 606, 609-10, 308 S.E. 2d 293, 294-95 (1983).

After a review of these factors as they apply in this case, we find no error in the trial court's conclusion that the pretrial iden-

tification procedure was not so impermissibly suggestive or con-
ducive to misidentification as to violate the defendant's right to
due process. Gilbert testified that he observed the man outside
the trailer for 5-10 seconds from a distance of 15-20 feet. It was
approximately 9:00 p.m. and thus dark outside; however, the area
was illuminated by the lights of an industrial plant on the other
side of Highway 49. Deputy Eggers testified there was enough
light in that parking lot area to read a license plate out the side
window of his patrol car from 50 feet away without any additional
artificial lighting. Also, Gilbert testified the light from inside the
trailer lit up the outside a little when the door was open. At trial,
Gilbert described the man he saw at the trailer as

> in his late forties, early fifties. He looked six foot, a little bit
> over. Looked from a hundred and fifty to hundred and eighty
> pounds. Had a day, day or two old beard, looked like he
> hadn't shaved in a couple of days. Had a ball cap on with a
> patch, a white one . . . . [His hair] was grayish black, short,
> cut short, and looked like it was salt and pepper color, gray
> and black.

He identified the defendant as the man he saw, having no doubt
in his mind. Deputy Sheriff Eric Baggarly interviewed Gilbert at
the Harrisburg Volunteer Fire Department less than an hour af-
ter the shooting. Deputy Baggarly testified that Gilbert gave the
following description to him: "a white male — white male in his
late forties or fifties with light whiskers, gray hair, and a hat par-
tially covered his head." A few minutes after he arrived at the
fire department, Deputy Eggers drove to the scene of the trailer.
From a distance of 200-250 feet away, he observed a white male
wearing a cap come out of the trailer twice, getting in the pickup
truck the second time and driving away. Deputy Eggers stopped
the truck, and found the defendant to be the operator. He de-
scribed him as wearing a "cap with a patch on it," and Eggers
said, "He appeared to have a heavy beard, I mean, just a day or
two beard." The defendant was detained in a patrol car at the
Mineral Research Plant while Gilbert was brought there. On the
ride from the fire department to the Mineral Research Plant,
the officers did not suggest to Gilbert that he ought to pick out
the man in the patrol car as being the man he saw outside the
trailer. Officer Baggarly asked Gilbert if he "minded looking at an
individual and see if he could identify him." Gilbert walked up to

the car, looked in the car at the individual there for 10-15 seconds and said, "That's him." Officer Baggarly asked Gilbert if he was sure. Gilbert replied, "Yes, sir, that is definitely the man. No doubt in my mind that is him."

We hold the trial court committed no error in admitting the evidence of Gilbert's pretrial identification of the defendant and his identification of the defendant at trial. We have reviewed the findings of the trial court on this issue and find them to be supported by plenary competent evidence. This assignment of error is overruled.

[3] Next, we consider defendant's assignment of error contending the State's evidence was insufficient as a matter of law to go to the jury and to convict the defendant. We disagree. In *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981), our Supreme Court stated the standard for review:

> The test of the sufficiency is the same whether the evidence is circumstantial or direct, or both: the evidence is sufficient to withstand a motion to dismiss and to take the case to the jury if there is "evidence [which tends] to prove the fact [or facts] in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture." *State v. Johnson*, 199 N.C. 429, 431, 154 S.E. 730, 731 (1930). If the evidence adduced at trial gives rise to a reasonable inference of guilt, it is for the members of the jury to decide whether the facts shown satisfy them beyond a reasonable doubt of defendant's guilt. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967). (Brackets in original.)

> [I]n order to survive a motion for nonsuit there must be substantial evidence of all material elements of the offense. It is against this standard that defendant's claim of insufficient evidence must be judged.

*Id.* at 504-5, 279 S.E. 2d at 838. Defendant was charged and convicted with assault with a deadly weapon with intent to kill inflicting serious injury, in violation of G.S. 14-32(a). The essential elements of the crime are (1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death. *State v. Meadows*, 272 N.C. 327, 331, 158 S.E. 2d 638, 640

(1968). We hold there was substantial evidence from which the jury could reasonably infer that the defendant shot at Kim Richardson, one of the occupants of the Plymouth automobile, with a deadly weapon, a Ruger .357 magnum revolver. The evidence that Ms. Richardson was seriously injured by one of the shots is positive and uncontradicted. The requisite "intent to kill" can be reasonably inferred by the defendant's use of a .357 magnum revolver, fired numerous times. *See State v. Musselwhite,* 59 N.C. App. 477, 480, 297 S.E. 2d 181, 184 (1982).

[4] Defendant was also charged and convicted of discharging a firearm into an occupied vehicle, a violation of G.S. 14-34.1. A person is guilty of this offense if he intentionally, without legal justification or excuse, discharges a firearm into an occupied vehicle with knowledge that the vehicle is then occupied by one or more persons or when he has reasonable grounds to believe that the vehicle might be occupied by one or more persons. *See State v. Hicks,* 60 N.C. App. 718, 720, 300 S.E. 2d 33, 35 (1983). We hold there was sufficient evidence from which the jury could reasonably infer that defendant, without legal justification or excuse, fired the .357 revolver at the occupied Plymouth automobile, with two of the bullets entering the vehicle, with the knowledge that the vehicle was then occupied by one or more persons or with reasonable grounds to believe the vehicle might be so occupied.

[5] We next consider defendant's assignment of error that the trial court erred by allowing the State to ask a leading question to witness Hugh Gilbert. The relevant portion of the transcript is reprinted verbatim:

Q. Could you tell who that figure was moving out toward the road, that person? Could you tell who that was?

A. I couldn't tell who it was, but it was a man.

Q. Did you notice any dissimilarities between—

MR. HAWKINS:—OBJECTION.

THE COURT:—OVERRULED. Go ahead.

Q. Did you notice any dissimilarities between Joe Cain when you saw him out there by the trailer and the figure you saw in the road?

State v. Cain

MR. HAWKINS:—OBJECTION.

THE COURT:—OVERRULED.

A. No.

MR. HAWKINS:—MOVE TO STRIKE.

THE COURT:—Motion DENIED.

[Exception 11]

A leading question is one which "suggests the desired answer from a friendly witness on direct examination and is answerable by yes or no." *State v. Holsclaw*, 42 N.C. App. 696, 701, 257 S.E. 2d 650, 653 (1979). "However, it is firmly entrenched in the law of this State that it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions, and in the absence of abuse the exercise of such discretion will not be disturbed on appeal." *State v. Greene*, 285 N.C. 482, 492, 206 S.E. 2d 229, 235 (1974). The question at issue here did tend to lead the State's witness. The defendant, however, has not demonstrated that the trial court abused its discretion in allowing the question and answer. We overrule the assignment of error.

[6] The defendant's fifth assignment of error alleges the trial court erred by not instructing the jury on the lesser included offenses of (1) assault with a deadly weapon with intent to kill, and (2) assault with a deadly weapon. The defendant contends that every element was disputed and that all lesser included offenses should have been submitted. The trial court submitted the following possible verdicts: (1) guilty of assault with a deadly weapon with intent to kill inflicting serious injury, or (2) guilty of assault with a deadly weapon inflicting serious injury, or (3) not guilty.

> The trial judge must submit and instruct the jury on a lesser-included offense when, and only when, there is evidence from which the jury can find that a defendant committed the lesser-included offense. Conversely, when all the evidence tends to show that defendant committed the crime charged in the bill of indictment and there is no evidence of the lesser-included offense, the court should refuse to charge on the lesser-included offense.

State v. Cain

*State v. Summitt,* 301 N.C. 591, 596, 273 S.E. 2d 425, 427, *cert. denied,* 451 U.S. 970, 68 L.Ed. 2d 349, 101 S.Ct. 2048 (1981).

There was no contradiction in the evidence of the infliction of serious injury to Ms. Richardson. Likewise, there was no contradiction in the evidence that a deadly weapon was used. The defendant was either guilty of shooting into the car and wounding the girl, or he was not guilty. This assignment of error is without merit.

[7] The defendant in his last assignment of error contends the trial court erred by entering the presumptive sentence for each offense after having found two factors in mitigation and none in aggravation. As mitigating factors, the trial court found "[t]he defendant has no record of criminal convictions," and "[t]he defendant has been a person of good character or has had a good reputation in the community in which he lives." The defendant argues that the mitigating factors must of necessity outweigh the aggravating and that "both the intent of the Presumptive Sentencing Act and . . . fundamental fairness should require that less than the presumptive sentence should have been entered in each case . . . ." The State counters that the sentence below was within the court's discretion and should not be disturbed and argues further that defendant has no right to appeal under G.S. 15A-1444(a1) because his sentence did not exceed the presumptive term set by G.S. 15A-1340.4.

The State's argument as to G.S. 15A-1444(a1) is well taken. That statute provides:

(a1) A defendant who has been found guilty, or entered a plea of guilty or no contest to a felony, is entitled to appeal as a matter of right the issue of whether his sentence is supported by evidence introduced at the trial and sentencing hearing only if the prison term of the sentence exceeds the presumptive term set by G.S. 15A-1340.4, and if the judge was required to make findings as to aggravating or mitigating factors pursuant to this Article. Otherwise, he is not entitled to appeal this issue as a matter of right but may petition the appellate division for review of this issue by writ of certiorari.

"The [Fair Sentencing] Act does not allow appeal of a presumptive sentence as of right." *State v. Dickey,* 71 N.C. App. 225, 321

S.E. 2d 492 (1984). In our discretion, however, we elect to treat the purported appeal of the sentences below as a petition for certiorari and allow the petition.

Our research has revealed no cases discussing the issue of whether the trial court must impose a sentence below the presumptive if it finds mitigating factors and no aggravating factors. G.S. 15A-1340.4 provides, in pertinent part:

> (a) . . . If the judge imposes a prison term . . . he must impose the presumptive term provided in this section unless, after consideration of aggravating or mitigating factors, or both, he decides to impose a longer or shorter term . . . .
>
> \* \* \* \*
>
> (b) If the judge imposes a prison term for a felony that differs from the presumptive term . . . the judge must specifically list in the record each matter in aggravation or mitigation that he finds proved by a preponderance of the evidence. If he imposes a prison term that exceeds the presumptive term, he must find that the factors in aggravation outweigh the factors in mitigation, and if he imposes a prison term that is less than the presumptive term, he must find that the factors in mitigation outweigh the factors in aggravation. However, a judge need not make any findings regarding aggravating and mitigating factors . . . if he imposes the presumptive term . . . .

The quoted language sets forth the method by which the trial court *may* give a sentence above or below the presumptive sentence. It does not require the court to impose a sentence above the presumptive if aggravating factors outweigh mitigating factors, or a sentence below the presumptive if mitigating factors outweigh aggravating factors. In *State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983), our Supreme Court held that "[u]pon a finding by the preponderance of the evidence that aggravating factors outweigh mitigating factors, the question of whether to increase the sentence above the presumptive term, and if so, to what extent, remains within the trial judge's discretion." *Id.* at 380, 298 S.E. 2d at 680. We find that the same rule of discretion should also apply when the trial court finds one or more mitigating factors and no aggravating factors and has thus by implica-

tion found that the mitigating factors outweigh the aggravating factors. We hold that upon a finding of one or more mitigating factors and no aggravating factors, the question of whether to reduce the sentence below the presumptive term, and if so, to what extent, is within the trial court's discretion. No abuse of that discretion has been shown here.

No error.

Judges WHICHARD and EAGLES concur.